WILLIAM ELIOT SMITH, Appellant, v. BUREN R. SHERMAN
*et al.*

**Articles of Incorporation:** ACKNOWLEDGEMENT. *Validity.* Where a
certificate of acknowledgment of articles of incorporation of a
mutual fire company is preceded by the name of tne state and
county and the signature of the officer is followed by words
"Notary Public," it is sufficient to render the incorporation
valid, though the body of the certificate does not recite that the·
officer is a notary public, or state the county in which he is·
authorized to act.

CONSTRUCTION. *Limiting Indebtedness.* Articles of incorporation·
of a mutual fire insurance company which recite the highest
amount of indebtedness to which such company may subject.
itself, except for insurance liability are not in violation of
Code, 1873, section 1061, requiring articles of incorporation to·
fix the highest amount of indebtedness which the corporation
may contract, which must in no case, except in that of risks of·
insurance companys, exceed two-thirds of its capital stock.

SAME. *Exemption of Members From Liability.* Articles of incor-
poration of a mutual fire insurance company which provide·
that the private property of its members shall be exempt from
corporate debts, except to the extent of their respective obli-
gations on their subscriptions, is a sufficient exemption' of the·
members of the company from personal liability to render the·
incorporation valid, though it provides that such exemption
shall not apply to obligations of the association created by a
written guaranty by certain stockholders, given as a temporary
loan to the company and not as a protection thereof.

CHANGING FORM OF ORGANIZATION: *Stockholders' Liability.* A mu-
tual fire insurance company was organized under Code, title 9,.
chapter 1, exclusively for the purpose of insuring the property
of its members; but a guaranty fund was created in the form·
of shares which required a payment not to exceed ten per cent
in any six months, and that the whole amount of said sub-
scription should be void at the option of the shareholder after·
three years from the date thereof.    Such guaranty fund was.
not intended as any part of the working capital ·of the com-
pany, but was only a mere temporary advancement or loan.
*Held*, that such fund did not change the character of the organ-
ization from that of a purely mutual company,. and, hence, the·

subscribers to such fund, were not liable to the company as stockholders owning unpaid subscriptions.

*Policy Void.* A stock policy issued by a mutual fire insurance company in violation of Code, 1873, section 1159, which prohibits mutual companies from issuing such policy, is absolutely void and cannot be enforced.

*Officers Not Individually Liable.* Where officers of a mutual fire insurance company issue a stock policy in violation of Code, 1873, section 1159, prohibiting mutual companies from issuing such policies, the officers are not individually liable thereon.

*Good Faith of Officers as a Defense.* Where the officers of a mutual fire insurance company issue a stock policy in violation of Code 1873, section 1159, prohibiting a mutual company from issuing such policies, and action is brought against the officers to recover for loss thereunder, evidence is admissible to show that such officers advised with attorneys as to the liability on such policy, and followed the advice obtained, as evidence of good faith.

FRAUD. *Personal Liability of Signers of Guaranty Agreement.* Plaintiff's evidence was to the effect that he insured in a mutual fire company, relying on statements made by an agent supplemented by circulars and cards issued at different times by the company, from which he presumed that there was a guaranty fund to protect the policies of the company. The circulars and cards, etc., were not introduced in evidence, and there was no evidence that any agent was authorized to make such statements nor that the officers or stockholders of the corporation knew that such statements had been made. The guaranty fund of the company was in the nature of a temporary loan for the benefit of the corporation and the nature thereof could have been determined by an examination of the articles of incorporation on file in the office of the secretary of state and county recorder. *Held,* not sufficient evidence of fraud to authorize a recovery of an amount due on the policy from the persons signing the guaranty agreement.

BY-LAWS INFORMALLY ADOPTED: *When valid.* Where the articles of incorporation of a mutual fire insurance company provide that it may establish by-laws, and by-laws are published and acted on during the existence of the company, such by-laws are valid though they were not formally adopted by the board of directors.

*Appeal from Blackhawk District Court.*—HON. A. S. BLAIR, Judge.

SATURDAY, APRIL 13, 1901.

IN 1887 the defendants, with others, organized an insurance company known as the Citizens' Mutual Insurance Company. Before the company commenced business, the defendants, with others, executed the following writing. "For the purpose of the guarantee or pledge fund of the Citizens' Mutual Insurance Company of Waterloo, Iowa, I hereby promise to take the number of shares of said fund set opposite my name, at one hundred dollars per share, payable on the order of the directors of said association; provided, not to exceed ten per cent. thereof shall be payable in any six months: and provided, the whole amount of my subscription shall be void, at my option, after three years from date hereof. Dated this 24th day of February, A. D. 1887." On the 12th day of December, 1889, the company issued a policy of insurance to the plaintiff on property situated in the state of Illinois, and a loss occurred under the policy in November, 1890. On the 14th day of February, 1891, the company made a general assignment. The plaintiff's loss was unpaid, and in January, 1892, he procured a judgment against the company for the amount thereof. This judgment cannot be made from the assets of the company, and plaintiff brings this action against the defendants as individuals, alleging that the company was never legally incorporated, and did business only as an unincorporated association; that the defendants are liable as stockholders in the company, and on their guarantee; and that the plaintiff was induced to insure in the company through the fraud and false representations of the company, of which the defendants had knowledge. After the evidence was all in, both sides moved for a directed verdict. The motion of the defendants was sustained, and a verdict returned accordingly, upon which judgment was rendered.—*Affirmed.*

*J. C. Gates* and *Shull & Farnsworth* for appellant.

*Boies & Boies* and *Courtright & Arbuckle* for appellees.

Sherwin, J.—Assignments of error 1 to 13, inclusive, relate to rulings on the introduction of testimony and documentary evidence. We discover no error that was not cured by subsequent rulings. The articles of incorporation of the Mutual Insurance Company were offered by the defendants, and objected to by plaintiff on the grounds stated by him as follows: (1) For the reason they were never properly acknowledged, and in that the attempted acknowledgments failed to set forth in the title of the officer taking such acknowledgments ; (2) such acknowledgments failed to set forth and show the county of which the notary purporting to take the same was an officer; (3) the said articles failed to set forth the highest amount of indebtedness to which the company would be liable or subject, as required by law; (4) such articles failed to exempt the private property of the members and incorporators of the company from liability for corporate debts. The acknowledgments were not all taken by the same notary, nor in the same county, and in no instance is the title of the officer, or the name of the county in which he was authorized to act, recited in the body of the certificate; but in each instance the certificate is preceded by the name of the state and county, and the signature of the officer is followed by the words, "Notary Public." It is claimed by the appellant that the same particularity is required in acknowledgments of this kind that is required in acknowledgment of deeds, and, if this position were to be held correct, the acknowledgments might have to be held insufficient. But we cannot adopt this view of the law. Section 1958 of the Code of 1873, relied upon, makes express provision for the acknowledgment of deeds and other instruments affecting real estate. In construing the same statute in the revision of 1860 this court held, in *Willard*

*v. Cramer,* 36 Iowa, 22, that a failure to so name the official title was a failure to comply with the law; but the decision was based upon the express language of the statute, requiring conveyances of personal property to be acknowledged the same as those of real estate. The decision in *Fogg v. Holcomb,* 64 Iowa, 621, was also based on the same ground. Neither of these cases can be considered as authority for plaintiff's contention in this case, for there was no statutory requirement as to the particular way in which the acknowledgments in question should be taken. It is enough if it appear that they were taken by a person duly authorized to do so, within the county where he might lawfully act; and this, we think, is sufficiently shown. See *McKnight v. McCullogh,* 21 Iowa, 111; *Stone v. Miller,* 60 Iowa, 243; *Mackie v. Railroad Co.,* 54 Iowa, 540; *People v. Cheeseman,* 7 Colo. Sup. 376 (3 Pac. Rep. 716). It is presumed that all official acts are performed within the limits of such official's jurisdiction. 1 Devlin, Deeds, section 486; Mechem, Public Officers, section 579.

The articles of incorporation declared that "the highest amount of indebtedness to which said company may at any time subject itself, except for insurance liability, is ten thousand dollars." Section 1061 of the Code of 1873 provided that the articles of a corporation must fix its highest amount of indebtedness, "which must in no case, except in that of risks of insurance companies, exceed two-thirds of its capital stock." It is not necessary to determine whether this statute was intended to include insurance liability in the amount of corporate indebtedness. There is force, however, in the argument that it did not; for it is at once apparent that it would be impossible to determine in advance the amount of insurance risks that might be written, unless there was a fixed limit beyond which the company would not issue its policies. It has been the rule in this state for many years that substantial compliance with the law in this respect is all that is required, and it has been repeatedly held that where the amount of the indebtedness is ascertain-

able the requirements of the statute have been met.  *Sweney v. Talcott,* 85 Iowa, 103; *Thornton v. Balcom,* 85 Iowa, 198; *Park v. Zwart,* 92 Iowa, 37.   Here the amount of liability was fixed definitely at $10,000, except as to insurance risks; and, if it be conceded they are within the provisions of the statute, the amount of such risk could be easily ascertained, and the amount of possible future indebtedness determined with certainty.   We think this sufficient to meet the requirements of the statute.   Section 8 of he articles of incorporation provides, "That private property of the members and subscribers to the guaranty fund shall be exempt from corporate debts, except to the extent of their respective obligations to the association on said subscriptions."   This was a clear and definite exemption of the private property of all members of the company, so far as its creditors were concerned.   It went further, it is true, and provided that the exemption should not apply to the obligations to the association created by the written guaranty; but this guaranty was only for the purpose of providing the company with funds temporarily, upon call of the board of directors, and the money paid thereon was to be returned.   In other words, it was to be an advancement to the company as a loan, and did not concern the creditors of the company.   We reach the conclusion then that the Mutual Insurance Company was legally incorporated, and that its articles of incorporation were properly admitted in evidence.

The by-laws of the company were admitted in evidence over the plaintiff's objection that they were not legally adopted.   The record does not show a formal adoption by the board of directors of the company, or by the company itself, but the by-laws themselves show an approval over the signatures of more than a majority of the incorporators.   The aritcles of incorporation provide that the company may "establish by-laws."   The by-laws thus approved were published and acted upon during the existence of the company and, were undoubtedly adopted,

though informally. We think this sufficient. *Corey v. Sherman,* 96 Iowa, 114.

It is conceded by appellant and appellees that the facts in this case are practically without conflict, that the motions to direct a verdict presented the entire question as to whether there was liability on the part of the defendants, and that the court was justified in directing a verdict for one side or the other. The plaintiff's motion was based on the want of legal incorporation, substantially as the questions were raised in the objections to the articles of incorporation; on the further ground that defendants' subscriptions to the guaranty fund made them liable to the full amount thereof, as if they were stockholders; third, on the ground they were partners; fourth, because the contract of insurance was the individual contract of the defendants; fifth, because the contract was an *ultra vires* one, made by the defendants as officers of the company; and, lastly, because the defendants were guilty of fraud and false representations, inducing the plaintiff to take the policy in ·question: The first of these propositions we have already disposed of. So that the remaining question, and, as appellant says, the real question presented by this case is the liability of these defendants as guarantors. We had under consideration the organization of this same company in the case of *Corey v. Sherman,* 96 Iowa, 114, and there held that it was a mutual company organized under the provisions of chapter 1 of title 9 of the Code, to transact business authorized by section 1160. It was also there held that "the guaranty fund was not designed to be any part of the working capital of the company, but was to be drawn upon only in case of emergency, when the money raised from assessments should be insufficient to pay losses when due, and all money obtained from the guaranty fund was to be regarded as a mere temporary advancement or loan to be refunded on the order of the directors." In *Berry v. Insurance Co.,* 94 Iowa, 135, and in *Corey v. Sherman,* it was held that such guaranty fund was not inconsistent with the organization or pur-

pose of a mutual insurance company. In view of these decisions, it is clear that the creation of such fund does not in any way change the character of the insurance organization from that of a purely mutual company to that of a joint-stock company, and it must logically follow that the only liability incurred by the defendants when they subscribed to such fund was for the advancement of such sums as might from time to time be called for by the board of directors, and that they are not on account of such subscription liable to the plaintiff as stockholders owing unpaid subscriptions.

The third and fourth grounds of the motion were based on the contention that the company was not duly incorporated, and are disposed of by what we have heretofore said.

Fraud is alleged on the ground that representations were made that the company was possessed of a guaranty fund of $50,000, which secured the policies issued. It is fundamental that fraud must be clearly proven. It will never be presumed. The testimony upon which the claim is based in this case is that of the plaintiff's agent who took the policy in question, supplemented by circulars and cards issued at different times by the company. Most of the testimony given by said agent is vague and unsatisfactory. He does not testify to conversations with the solicitor with whom he did the business; nor does he exhibit the circulars, cards, etc., or testify as to the written statements upon which he claims to have relied. There is no evidence in the record that either the company or any of the defendants authorized any agent to make false statements as to the financial responsibility of the company, nor is there evidence that they knew such statements had been made. The witness says that from the "statements contained in the circulars and cards issued by the company, and from the representations made by its agents," he presumed there was a "guaranty fund of fifty thousand dollars, which would respond at any time when the company would need that sum." That these defendants would not be bound by any unauthorized and unratified act of an agent of the company

is too clear for discussion. What the circulars or cards contained that would warrant the conclusion drawn by the witness is not shown, and, even if it were true that he was not informed as to the limited character of the guaranty fund, the plaintiff could not recover of the defendants without proof of intentional concealment of such true character by them. *Hoffman v. Dickey,* 54 Iowa, 135. . There is not even a scintilla of evidence that such was the fact. On the contrary, the articles of incorporation of the company filed in the office of the secretary of state and in the recorder's office of Blackhawk county clearly and fully defined the purpose and extent of the guaranty fund. These articles were filed in these offices for the express purpose of conveying to the public the nature and character of such organization, and, unless some false statement was made or authorized by the defendants in relation to the fund, no fraud could be found; and, in the absence of some affirmative act or statement in connection therewith which was false, no fraud could be predicated on the statement that there was a guaranty fund of $50,000.

Our conclusion is that fraud on the part of the company or on the part of any of these defendants has not been shown. The policy issued to the plaintiff was upon the stock plan, and was clearly illegal and absolutely void because in violation of the statute (section 1159, Code 1873).

8     *Corey v. Sherman,* 96 Iowa, 114. A contract which is void because in violation of law cannot be enforced. *Reynolds v. Nichols,* 12 Iowa, 398; *Caldwell v. Bridal,* 48 Iowa, 16; *McNulty v. Bank,* 164 Ill. 427 (45 N. E. Rep. 954, 56 Am. St. Rep. 203); *Gas Co. v. Sims,* 104 Cal. 326 (37 Pac. Rep. 1042, 43 Am. St. Rep. 105).

And see also note in 70 Am. St. Rep. 156, and cases

9     cited. But plaintiff contends that the defendants are liable because, as officers of the company, they made a contract which was illegal as to the company. This contract was not the individual contract of the defendants.

VOL 113 Ia—39

It was the contract of the corporation, and the plaintiff was charged with knowledge of its authority under its articles of incorporation, and under the statute authorizing and controlling its organization and business; and if he saw fit to enter into a contract with the company which he knew was illegal because prohibited by statute, he is in no position to charge the defendants with liability thereon. Where a corporation is doing business, and its officers make contracts which may be *ultra vires*, though not illegal, because prohibited by law, the officers are not to be charged with personal liability because they have misapprehended the scope of the corporation's power. Reese, Ultra Vires, 212; *Hodges v. Screw Co.*, 1 R. I. 312 (53 Am. Dec. 624); *McCurdy v. Rogers*, 21 Wis. 199; 1 Am. & Eng. Enc. Law (2d Ed.), p. 1127; *Abeles v. Cohen*, 8 Kan. 128; *Linkauf v. Lombard*, 137 N. Y. 417 (20 L. R. A. 48, 33 N. E. Rep. 472). That the company honestly supposed it had the power to issue the policy in suit is abundantly shown by the record. We think it was also competent to prove that it advised with attorneys on this very subject, and acted upon the advise obtained. We are of the opinion that a verdict for the defendants was properly directed, and the judgment is affirmed.—AFFIRMED.