WILLIAM S. DWINNELL and Another v. MINNEAPOLIS FIRE &
MARINE MUTUAL INSURANCE COMPANY and Others.[1]

July 3, 1902.

Nos. 12,978—(164).

### Insolvent Insurance Company.

The Mutual Fire Insurance Company of Minnesota was duly incorporated, under and pursuant to Laws 1895, c. 175, for the purpose of doing
a general fire insurance business on the mutual plan. Thereafter an
attempt was made to change the character of the corporation, by
amendments to its articles, to authorize and empower it to do a marine
insurance business; but the statutes on the subject were not complied
with, and the company was never legally authorized to issue marine
policies. In connection with the attempted change in the character of
the corporation, the officers undertook to create and provide a capital
stock or guaranty fund; and defendants in this action, for that purpose,
signed and delivered to the corporation a subscription contract whereby
they promised to pay to the company the sums set opposite their names
at such times and in such amounts as might from time to time be
required by the company. Thereafter, for the purpose of giving standing and credit to the corporation and inducing persons to take its
policies, the officers thereof represented by public advertisements, extensively circulated, that it possessed a capital or guaranty fund. But
it does not appear that any of the present creditors of the concern were
induced thereby to insure their property with the company; nor does it
appear that the company actually engaged in a marine insurance business, or issued other than mutual policies, payable in case of loss by
assessments upon policy holders in proportion to the amount of insurance carried by each. The company became insolvent, and this action
was brought by the receivers to recover against the subscribers to the
guaranty fund for the full amount subscribed. It is *held*:

### Mutual Fire Insurance—Guaranty Fund.

1. That a mutual fire insurance company is not authorized, as an incident to the exercise of the general powers and functions of such a
corporation, to create or provide a capital or guaranty fund; nor is such
a power conferred upon a mutual company by Laws 1895, c. 175.

### Same.

2. A mutual fire and marine insurance company may, under the pro

[1] Reported in 91 N. W. 266.

visions of that statute, provide such a fund in the manner therein directed; but it is *held* in this case that the complaint does not show that the company in question was ever organized as a marine company, or that it possessed, or ever exercised, the power to issue marine policies.

## Subscription to Fund.

3. A subscription to such fund as provided by the statute is in the nature of a loan, or an agreement on the part of the subscriber to advance to the company from time to time money sufficient to enable it to pay current losses and expenses, the same to be refunded to them subsequently, with interest.

## Estoppel.

4. That the facts pleaded in the complaint do not estop defendants from disputing their liability as subscribers to such fund.

Appeal by plaintiffs, as receivers of Minneapolis Fire & Marine Mutual Insurance Company, from an order of the district court for Hennepin county, Elliott, J., sustaining a demurrer to the complaint. Affirmed.

*William S. Dwinnell* and *John C. Sweet,* for appellants.

*Lane & Nantz,* for respondent.

BROWN, J.

Action by the receivers of a mutual insurance company, appointed under G. S. 1894, c. 76, to wind up the affairs of the corporation, against the subscribers and contributors to what is described as a guaranty or subscription fund. The appeal is from an order sustaining a demurrer to the complaint.

It appears from the complaint that the Minneapolis Fire & Marine Mutual Insurance Company was incorporated in 1895, under and pursuant to Laws 1895, c. 175, for the purpose of engaging in a mutual fire insurance business. At the time of its incorporation the name of the company was the Mutual Fire Insurance Company of Minnesota. It was originally organized as a mutual insurance company, and continued in that sort of business from its organization until 1897, when the articles of association were amended so as to include the right to insure property against fire, lightning, hail, or tempest on land or sea. The amended articles read as follows:

"The object of this company shall be to effect insurance against loss or damage to property by fire, lightning, hail, or tempest on land and sea, on the principle known as the mutual plan."

At the same time the name of the corporation was changed to the Minneapolis Fire & Marine Mutual Insurance Company.

After this change in the articles of association, and to effectuate the objects and purposes thereof, certain of the officers of the corporation undertook to raise a fund of $200,000, evidently under the provisions of Laws 1895, c. 175, § 47, by causing subscriptions to be executed and delivered to the company by the defendants in this action; the subscriptions being in the form prescribed by that statute. The complaint alleges that thereafter the company represented and held out to the public generally that it was the owner and holder of a capital stock or guaranty fund to the amount of such subscriptions; but there are no allegations that any such representations were the cause of any of the present creditors becoming policy holders in the company

The company became insolvent and unable to meet its debts and losses, and plaintiffs were appointed receivers for the purpose of winding up its affairs, and they brought this action against the subscribers to the fund mentioned to recover the amount agreed to be paid by each. Plaintiffs contend: (1) That the corporation had the right to create and provide this guaranty fund as an incidental power inherent in the corporation; (2) that a fair construction of the statute under which the company was organized confers authority on mutual insurance companies to provide for such a fund; and (3) even if there be no such authority, either by force of the statute or as an incident to the corporation, that defendants are estopped from disputing their liability, since the fact that the fund had been provided was advertised by the corporation as a means or inducement to people to insure their property with the company.

1. The company was originally incorporated as a purely mutual insurance company, and it so continued until it became insolvent, unless the change in the articles of association extended its power and conferred upon it authority to issue marine, as well as ordinary, mutual fire policies. Treating it as a mutual company, the

first question with which we are confronted is whether such an insurance company, incident to its general power to do an insurance business, has authority to create and provide a capital stock or guaranty fund for the payment of losses. The feature distinguishing a mutual insurance company from all others is that in the mutual company the policy holders are at once the insurers and the insured; in all others the policy holder is the insured and the company the insurer. Policies are issued to persons applying therefor, and expressly provide, in accordance with the requirements of the statute, that losses are to be paid by assessments upon the policy holders. There is no capital stock, none is provided for by statute, in a purely mutual company, and the policy holders well know and understand that they are liable for all losses and expenses in proportion to the amount of insurance carried by each.

The statute under which the corporation in question was created and formed expressly provides accordingly; and no provision is found therein which can be construed as authorizing a strictly mutual company to provide a capital stock or a guaranty fund to relieve the policy holder from assessments. And the question presented is whether the power to create such a fund is one of the incidental powers of such a corporation.

This question came before the supreme court of the state of Wisconsin in the case of Kennan v. Rundle, 81 Wis. 212, 223, 51 N. W. 426, where the court in a very able and clear opinion held that such a corporation had no power to create such a fund; that to permit it to do so would be to change wholly the character of the corporation and destroy the mutuality principle upon which it is founded. It was there said:

"It follows, therefore, that if the money to be paid for all losses and expenses is to be raised through such a guaranty bond, or by other extraneous means, and the members of the company are thereby exempted from assessments and the payment of their pro rata shares of such losses and expenses proportionate to their insurance, this essential feature of mutuality is entirely destroyed and the company ceases to be a mutual insurance company."

The same conclusion was reached in Trenton v. McKelway, 12 N.

J. Eq. 133; and the decision there made was followed and approved in Barriclo v. Trenton, 13 N. J. Eq. 154; National v. Miller, 33 N. J. Eq. 160; and in Morris v. Sussex, 20 N. J. Eq. 542, 564. The question came before the supreme court of Iowa in the case of Berry v. Anchor, 94 Iowa, 135, 62 N. W. 681, and it was there held that the corporation had the power to provide such a fund for the purpose of securing advances or loans to meet losses and expenses. The court there said:

"We are of the opinion that guaranty fund notes which are designed to furnish money to the company for temporary use in, paying its legitimate expenses and losses, which is to be refunded from money realized from assessments, * * * may be entirely in harmony with the purposes of a mutual insurance company."

But the same court held in Smith v. Sherman, 113 Iowa, 601, 85 N. W. 747, that the subscribers to such a fund were not unconditionally liable, and recovery could not be had against them, after the insolvency of the company, at the suit of a policy holder who had suffered a loss; that the effect of the subscription to the fund was merely an agreement to advance, temporarily, to the company, money to pay current losses, the same to be refunded when proper assessments upon policy holders were made and collected.

A contrary doctrine, however, was laid down in Hope v. Weed, 28 Conn. 51, and also in Hope v. Perkins, 38 N. Y. 404. It was held in those cases that the right to provide such a fund was incidental to the exercise of the general powers of the corporation, and that obligations delivered to the company by the members thereof for the purpose of securing and providing the fund were valid and enforcible.

We have examined all these cases, and others bearing indirectly upon the question, and our conclusion is that a purely mutual insurance company does not, in the absence of statutory authority, possess the power to create a guaranty fund of the character of that claimed to have been created in this case. The policy of the law with respect to the control and management of insurance corporations, as well as other corporations, is with the legislature. The statute under which this corporation was formed contains no provisions which can be construed as authorizing mutual insurance

companies to create or provide such a fund, and, if wisdom dictates that they should possess the power, the legislature should provide for it, not the courts. If such a fund be provided and relied upon as a basis for paying losses, the whole character of the corporation becomes changed, and it no longer remains a mutual company. We are unable to reconcile ourselves to the view that the right to provide such a fund is incident to the exercise of the general functions of such a company. The general power and authority of a mutual insurance company is to issue policies payable exclusively in case of loss by the holders, levying and collecting assessments to pay them; and we cannot understand how a destruction and abrogation of those powers by the creation of a fund to meet losses, and exempting the policy holders from assessments can be said to be incidental to their performance.

2. It is also urged that the character of this corporation was changed by the amendment of its articles of association, and that it was authorized to do a general fire and marine insurance business, with power to create and provide a guaranty fund. Section 47 of the act of the legislature under which the company was incorporated provides that a mutual marine insurance company, organized under that act, shall have power to create a guaranty fund by accepting written subscription agreements in the following language:

"The subscribers severally agree to pay the    *    *    *    insurance company on demand the whole or such part of the sums set against our names as may be called for from time to time for the use of said company in the payment of its losses and expenses, not otherwise provided for."

This was the form of the subscription alleged to have been given the company by defendants in this case, and the evident intention of the parties was to proceed under this statute, and, by the amendment of its articles and the fund thus raised, to enable itself to do a general fire and marine insurance business. But there was a failure to comply with the statute, and the purposes thus intended were never lawfully accomplished. The statute provides that, before a mutual marine insurance company shall be authorized to issue policies, there shall be subscribed the sum of

$200,000, and a certificate of the fact, stating that the subscribers are known to the officers of the corporation, and are solvent and able to pay their subscriptions, has been deposited with and approved by the insurance commissioner. Until full compliance with these statutory requirements, the company is not authorized to do a marine insurance business. That the parties intended their action to be under this statute, there is no doubt, but there was a failure to comply with its provisions, in that the full sum of $200,-000 was not subscribed, the amount falling short something like $1,000 or more; and no certificate was filed with the insurance commissioner as there directed. So that the company never possessed itself of proper legal authority to issue marine insurance policies.

Though it appears from the complaint that the company had extensively advertised its guaranty fund, and for the purpose of giving standing and credit to the company, there are no allegations showing that any marine insurance policies were ever issued, and, for aught that appears from the complaint, none other than the ordinary and usual mutual policy, payable from assessments in case of loss, were ever issued. And as there was a clear failure to comply with the statutes in the reorganization of the company, that the latter were the only policies issued we are bound to assume; for, in the absence of allegations to that effect, we cannot indulge in the presumption that the company did that which it possessed no authority to do.

3. But it is urged that the subscribers are estopped from calling in question the authority of the corporation in this respect. Conceding with plaintiff that defendants are so estopped, it is reasonably clear that an absolute and unconditional liability on their part for the amount of their subscription was not created. Their engagement was in the nature of a loan to the corporation, or an agreement on their part to advance such sums of money as might be necessary to enable the company to pay current losses and expenses, the same to be refunded to them from profits subsequently made by the company. Such is made clearly apparent by section 47 of the statute referred to, which provides that the subscribers to such fund

87 M.—5

"Shall be entitled to annual dividends of two per cent. upon the amount of their subscriptions from the profits of the company and shall also be reimbursed from future profits for all sums of money they may pay the company for its uses under their agreement, with lawful interest thereon."

That the parties so understood the agreement is made manifest by the allegations of the complaint, wherein it is alleged that certain advances which were made by subscribers were subsequently repaid to them by the corporation. The parties clearly did not intend to create an absolute and unconditional liability, and the transaction should be held an agreement on the part of the subscribers to make temporary advances to the concern to enable it to meet current losses, the same to be refunded to them with interest. Smith v. Sherman, supra. And defendants must be deemed to have signed the agreement in view of the conditions for reimbursement. From this it logically follows that they are not liable in this action, for, if recovery be had against them, it will be impossible to reimburse them. The company is insolvent, its affairs are being wound up, and it is in no position to comply with the statute in respect to refunding the money.

But, further, the insurance company was mutual, that is, the policy holders insured themselves; and there are no allegations in the complaint showing that they had any right to, or did, rely upon the guaranty fund to relieve them from paying such assessments as the company might from time to time be required to make to meet its losses and expenses. The statute expressly provides that each policy holder shall be liable to pay his proportional part of any assessment which may be made by the company on account of losses or expenses incurred by the corporation; and we are required to assume, there being no allegation in the complaint to the contrary, that the policies issued by this corporation contained that information, and thus provided for the payment of losses. We cannot assume that marine policies were issued, thus increasing the risks of the policy holders; for the company was never legally authorized to issue policies of that kind. So there is nothing upon which to base a holding that the subscribers to the fund are estopped from denying their liability. The policy holders were in no

way misled, nor in any manner deceived or prejudiced, by the action of the fund subscribers, because their contracts, the policies, informed them that their losses, if any they might suffer, would be paid, not from any guaranty fund, but from assessments upon policy holders. The subscribers to the guaranty fund agreed, by the terms of the writing, to pay such losses as were "not otherwise provided for," and the payment of mutual policies was "otherwise provided for." Such were the terms of their contract, and the complaint contains no allegation that any of the policies were issued to persons who had the right to rely upon the guaranty fund for the payment of losses, and they were bound to know the terms and conditions of their contract. Pfister v. Gerwig, 122 Ind. 567, 23 N. E. 1041; Miller v. Hillsborough, 42 N. J. Eq. 459, 7 Atl. 895.

It follows from these considerations that the subscribers to the fund in question are not liable to the creditors of the insurance company on account of their subscriptions to the guaranty fund, and the order appealed from is affirmed.

On October 8 the following order was filed:

PER CURIAM.

An application for a reargument herein having been duly made and considered, it is ordered that the same be, and is hereby, denied; but it is further ordered that the original opinion herein be modified, so as to leave the question as to the effect and construction of the contract of guaranty therein referred to open and undecided, for further consideration, should it ever arise.