WILLIAM S. DWINNELL and Another v. MINNEAPOLIS FIRE & MARINE MUTUAL INSURANCE COMPANY and Others.[1]

November 6, 1903.

Nos. 13,583, 13,636, 13,672—(49, 50, 51).

**Fire Insurance.**

It is sufficiently alleged in the amended complaint that the certificate with reference to the subscription agreement provided by Laws 1895, c. 175, § 47, was duly executed and filed, and approved by the insurance commissioner.

**Mutual Company—Marine Business.**

That the Minneapolis Fire & Marine Mutual Insurance Company was duly organized and incorporated to transact fire and marine insurance business upon the mutual plan, and *held*: A mutual fire insurance company may be authorized to do a marine insurance business only upon compliance with the provisions of section 27 and section 47 of chapter 175.

**Same.**

The business of issuing ordinary fire insurance policies upon boats navigating the Great Lakes and the high seas is marine insurance business, within the meaning of Laws 1895, c. 175.

**Estoppel.**

According to the allegations of the complaint, appellants, who were the directors of the insolvent company while in active business, and who executed the subscription agreement provided for by chapter 175, § 47, are estopped from denying their liability to the policy holders of such policies as were issued upon the representation that the company was

[1] Reported in 97 N. W. 110.

doing business as a stock insurance company with a paid-up capital stock of $100,000 and of a guaranty subscription capital of $200,000.

**Pleading.**

The complaint states a cause of action, and several causes of action are not improperly united.

Action in the district court for Hennepin county by plaintiffs, as receivers appointed to wind up the affairs of defendant company, to recover from the defendants other than said company the amounts of their respective subscriptions to a so-called "guaranty fund." From separate orders, Elliott, J., overruling their separate demurrers to the amended complaint, defendants, Titus Mareck, Leonard Paulle and others, and B. Phillips, Jr., and others, appealed. Affirmed.

*Cobb & Wheelwright,* for appellant Titus Mareck.

In any event the demurrer should be sustained for the reason that several causes of action have been improperly united in the amended complaint.

If the court should conclude that sufficient facts appear to create a liability on the part of the defendants, then it must consider the further question whether or not the plaintiffs can sue on all these contracts against all of these parties in one complaint. One of the grounds of the demurrer interposed by our client is that several causes of action have been improperly united in this complaint. It is perfectly clear that both the statute and pleader have treated the liability of all the defendants upon these guaranty contracts as several and not joined. This is not a case of one seeking to enforce payment from two or three persons liable upon the same written instrument of obligation, but it is an attempt to enforce in one action a promise of each signer which is absolutely distinct and independent from the promise of any other signer. The statute (G. S. 1894, § 5260) permits the uniting in the same complaint of several causes of action growing out of the same transaction. But it further provides that the causes of action so united shall affect all the parties to the action. This means that the same plaintiff cannot join in one complaint distinct causes of action against different defendants. See 11 Am. & Eng. Enc. (1st Ed.) 1015. This court has recognized this rule in several cases: thus in Sanders v. Classon, 13 Minn. 352 (379), a demurrer for improper joinder was sustained where

a cause of action against A. for goods sold and delivered was joined with a cause of action against B. on a promise to A. to pay for said debts.   So in Trowbridge v. Forepaugh, 14 Minn. 100 (133), a demurrer for improper joinder was sustained where the liability of one defendant for a wrongful act depended on a state of facts not affecting his codefendant.   Berg v. Stanhope, 43 Minn. 176.   See also Langevin v. City of St. Paul, 49 Minn. 189;  Straus v. Hoadley, 23 App. Div. 360.

*Chas. P. Barker, Reynolds & Roesser, C. S. Jelley,* and *Welch, Hayne & Hubachek,* for other appellants.

*William S. Dwinnell* and *John C. Sweet,* for respondents.

LEWIS, J.

A demurrer to a former complaint in this action was sustained (87 Minn. 59, 91 N. W. 266, 1098) upon the ground that the complaint did not show that respondent was organized as a marine insurance company, or that it possessed, or ever exercised, the power to issue marine policies.   Upon reargument the opinion was so modified as to reserve the question of the construction of the subscription agreement.   The complaint, having been amended, was demurred to again upon the same ground, and upon the additional ground that several causes of action were improperly united.   Appeal was taken from an order overruling the demurrer.

The ground assigned on the former appeal to show that respondent had not organized as a marine insurance company was based upon a failure of the complaint to show that it had complied with the provisions of Laws 1895, p. 415 (c. 175, § 47).   In the amended complaint, however, it is specifically alleged that on or about June 4 there was duly filed with the insurance commissioner of the state of Minnesota a sworn certificate, as provided by statute, which contained the names of the subscribers for the $200,000 required, and that such certificate was duly approved.   These allegations show a compliance with the statute in the respect mentioned.

Certain additional questions are presented upon this appeal, and one is that the complaint is insufficient for the reason that the issuing of ordinary fire insurance policies upon boats navigating the Great Lakes

and upon the high seas does not constitute marine insurance business within the meaning of the statute.

The provisions of chapter 175 are very complex and indefinite, and it will be necessary to refer to the nature of the organizations authorized by some of the different sections. Section 28 refers to two general plans of organization—one the stock plan, in which case the capital stock must be mentioned; and the other is the mutual plan. In section 29 (page 405) it is stated that companies organized to do a marine inland business upon the stock plan shall have a capital stock of not less than $200,000, whereas companies organized to transact fire insurance business on the stock plan shall have a capital stock of not less than $100,000; but by section 47 (page 415) it is provided that, when a company is organized as a mutual marine insurance company, it shall have a subscription fund of $200,000 as above noted. The company was originally incorporated merely as a mutual fire insurance company, and it is alleged in the complaint that on or about June 4, 1897, the articles were duly amended by which the name was changed to the Minneapolis Fire & Marine Mutual Insurance Company, and the business of the company was thereby changed to that of mutual fire and marine business. The first division of section 27 (page 403) provides that a company may be organized to insure against loss or damage to property by fire, hail, or tempest on land, upon the stock or mutual plan. Division 3 reads:

> "To insure upon the stock or mutual plan, vessels, freights, goods, moneys, effects, and money lent on bottomry or respondentia, against the perils of the sea, and other perils usually insured against by marine insurance, including risks of inland navigation and transportation."

Section 79 (page 433) in part provides that fire insurance companies may, however, do either a tornado, cyclone, windstorm and hail, or a marine or inland navigation business, or both, or any of said classes of insurance.

Giving due effect to each one of these various provisions, it is quite clear that the legislature intended that all companies organized to do business upon the stock plan must have a paid-up capital stock, in the case of fire insurance companies not less than $100,000, and in the

case of marine insurance, not less than $200,000, but that when a company is organized upon the mutual plan no capital stock is required when the business to be done is fire insurance. However, when the company is organized upon the mutual plan, and for the purpose of conducting a marine business, then a paid-up capital stock is not required, but in lieu thereof is provided a subscription agreement. Bearing this distinction in mind, the provision in section 79, to the effect that fire insurance companies may do a marine or inland navigation business, should be consistently construed so as to maintain the classification specified. In other words, if it was the manifest purpose of the legislature to authorize mutual companies to do a marine business only in case they shall provide a guaranty subscription fund, such purpose should not be annulled unless clearly intended by the subsequent proviso.

The provisions of section 27, when considered alone, would no doubt authorize a company to be organized for any one or more of the objects stated, but the requirements with respect to each particular class of business would have to be complied with, and each particular branch of the business of the company would have to be conducted independently, the result of which would be that the policy holders in a company so organized would be divided into classes according to the branch of business conducted, and the policy holders in the marine branch could not be assessed for losses in the fire insurance branch, and vice versa. We do not think that section 79 has the effect of changing this manifest purpose, at least in reference to mutual fire insurance companies, but only emphasizes the fact that a mutual fire insurance company may, if it desires, perfect itself under the provisions of section 27 and section 47 to conduct a mutual marine insurance business. As to fire insurance companies organized upon the stock plan, it might be different, for in such case there is a paid-up capital stock; but it is unnecessary to decide that point.

According to the complaint, respondent company was organized to do both fire and marine insurance upon the mutual plan. It engaged in the business of issuing ordinary fire insurance policies upon boats navigating the Great Lakes and the high seas, but engaged in no other marine insurance, and among the losses it sustained $3,151.38 was for losses upon boats under policies insuring against loss by fire on the sea. The question arises, did the company, in part, carry on a mutual ma-

rine insurance business? We are of the opinion that the issuing of policies upon boats insuring against loss by fire upon the inland lakes or the high seas is marine insurance business within the meaning of the statute. It follows that, unless appellants are responsible upon the principle of estoppel, their total liability is limited to the amount of loss resulting upon such marine policies.

However, the complaint alleges that each of the appellants was a party to the subscription fund, and subscribed for the amount of $12,500, and that thereafter they were duly elected directors of such company, and ever after continued to be the sole qualified and acting directors, with the exception of appellant Mareck, who resigned on April 16, 1900. It is further alleged that upon the execution of the agreement such subscribers delivered to the company certain properties as collateral, upon receipt of which the company, with the consent and knowledge of each of appellants, represented to the world that it had a subscribed capital stock of $200,000, and a paid-up capital or guaranty fund of $100,000; that such directors represented that it was a stock company, and as such was admitted to do business in several states upon the strength of such representations; that books of account were kept to show that its capital stock was $200,000, one-half of which had been paid in, and it published statements to its policy holders containing the representation that it possessed assets of a large amount, consisting, among other things, of loans in the amount of $100,000; that one-half of the insurance in force at the time of the insolvency of the company was in the form of stock insurance policies, containing no reference to the mutual character of the incorporation; and also that circulars and letters to the same effect were distributed—all with the knowledge and consent of appellants. It is further alleged that the policy holders receiving such policies were warranted in relying upon such representations, and did rely upon the same. Upon these grounds it is claimed that appellants are estopped from denying their liability upon such fire insurance policies.

On the former appeal it was stated in the opinion that, conceding defendants were estopped from calling into question the authority of the corporation, yet they were not liable under the terms of the subscription agreement, for the reason that such agreement did not constitute an unconditional liability. The court then had in mind, in treating

of the question of estoppel, the want of authority which arose by the failure of the company to file with the insurance commissioner the subscription agreement, as provided by section 47, and assumed that all policies issued were upon the mutual plan, and did not discuss or pass upon the question now presented, viz., conceding that such subscription agreement was duly executed, filed, and approved, and to that extent the company was organized to do a marine insurance business, yet, having induced policy holders to take policies upon the representation that the company was a stock company with a paid-up capital stock, are the appellants estopped from denying the responsibility which naturally followed their conduct? We are of the opinion that upon the facts stated in the amended complaint a good cause of action is stated as to such policy holders. The question involved is not one of ultra vires. Appellants were the directors and in charge of the business of the company. If they chose to represent that their subscriptions were in the nature of capital stock paid-up or secured; that they were doing business as a stock company, and not upon the mutual plan; and that policy holders might rely upon the integrity of the company because of its subscribed and paid-up capital stock—then certainly all liability incurred by reason of such misrepresentations cannot be avoided upon the ground that the subscriptions were taken in the first instance under the provisions of section 47.

The amended complaint was also demurred to upon the ground that several causes of action were improperly united. While it is true that the subscription agreement is, in its terms, a several, and not a joint, contract, and the amount sought to be recovered in this action is limited by the amount of the subscription of each of appellants, it does not follow that they are not jointly liable, under the facts and circumstances set forth in the amended complaint. The gist of the action is that the directors of the company misrepresented the character of the assets and the nature and responsibility of the company, and that, as a result of such misrepresentations, a large percentage of the policy holders were induced to transact business with it. The various appellants became liable by reason of their joint action in conducting the business of the company. Although the liability of each of appellants is limited to the amount subscribed, yet the subscription agreement was made for the purpose of creating a fund for the common benefit of all the credit-

ors.   In this respect the liability of the subscribers is similar to that of a stockholder in an insolvent corporation.   The action is equitable, and its general purpose will be advanced by litigating the entire matter in one action.   In such a case, where the litigation will be simplified, and the general purpose best subserved, the cause of action may very properly be classified as single.

Order affirmed.