WILLIAM S. DWINNELL and Another v. MINNEAPOLIS FIRE & MARINE MUTUAL INSURANCE COMPANY and Others.[1]

February 23, 1906.

Nos. 14,622—(164).

**Liability of Directors.**

Action by the receivers of an insolvent mutual insurance company to recover of the directors thereof the amounts of their respective subscriptions to a fund which the company with their knowledge, actual or imputed, represented to be its paid-up capital. *Held*, the directors are estopped from denying their liability to the extent of their respective subscriptions for the claims of creditors, whose policies were issued to and accepted by them in reliance upon such representations.

**Claims of Policy Holders.**

Creditors whose claims are based upon policies which were cash or stock policies containing no express reference to any mutual liability are presumed to have relied upon such representations, but such presumption does not extend to creditors who accepted policies which by their terms expressly provided for a mutual liability.

Appeal by plaintiffs from a judgment of the district court for Hennepin county, entered pursuant to the findings and order of Simpson, J. Reversed and remanded with instructions.

*W. S. Dwinnell, John C. Sweet,* and *Victor J. Welch,* for appellants.

*Cobb & Wheelwright,* for respondents Titus Mareck, Gustav J. Heinrich, Leonard Paulle, and George J. Sherer.

*Lane & Nantz,* for respondents Frank Heywood and William R. Miller.

[1]Reported in 106 N. W. 312.

START, C. J.

The plaintiffs are receivers of the Minneapolis Fire & Marine Insurance Company, hereinafter designated as the company, duly appointed for the purposes of winding up its affairs. They brought this action in the district court of the county of Hennepin to enforce, for the benefit of the creditors of the company, the alleged liability of the defendants upon a guaranty or subscription fund executed by them and represented to constitute a paid-up capital of the company for the purpose of paying its losses. The cause was tried by the court without a jury and resulted in a judgment in favor of the defendants as to all claims of policy holders for fire losses, except one, and against them for the claims for marine losses. The plaintiffs appealed from the judgment. This is the third appeal in this case.

The nature of the subscription or guaranty fund and the basis of the liability of the defendants thereon were determined by this court upon the former appeals. Reference is here made to the opinion of the court on the first appeal (87 Minn. 59, 91 N. W. 266, 1098) for a statement of the material allegations of the original complaint. The defendants demurred to the original complaint, the demurrer was sustained, and the ruling of the trial court was affirmed on appeal to this court, for the reason, with others, that the complaint contained no allegations to the effect that the policy holders relied upon that guaranty fund or the representations of the defendants with reference to it. The plaintiffs then amended their complaint, and alleged that the policy holders fully believed, and were warranted in believing, the representations made by the defendants with reference to the guaranty fund, and relied thereon in accepting their policies. The defendants also demurred to the amended complaint. The demurrer was overruled, the defendants appealed, and the order was affirmed by this court. 90 Minn. 383, 97 N. W. 110. The here material allegations of the amended complaint and the law applicable thereto are clearly stated in the opinion in these words (page 389) :

."Conceding that such subscription agreement was duly executed, filed, and approved, and to that extent the company was organized to do a marine insurance business, yet, having induced policy holders to take policies upon the representation that the company was a stock company with a paid-up capital stock, are the appellants estopped from

denying the responsibility which naturally followed their conduct? We are of the opinion that upon the facts stated in the amended complaint a good cause of action is stated as to such policy holders. The question involved is not one of ultra vires. Appellants were the directors and in charge of the business of the company. If they chose to represent that their subscriptions were in the nature of capital stock paid-up or secured; that they were doing business as a stock company, and not upon the mutual plan; and that policy holders might rely upon the integrity of the company because of its subscribed and paid-up capital stock—then certainly all liability incurred by reason of such misrepresentations cannot be avoided, upon the ground that the subscriptions were taken in the first instance under the provisions of section 47" [c. 175, p. 415, Laws 1895].

"The gist of the action is that the directors of the company misrepresented the character of the assets and the nature and responsibility of the company, and that, as a result of such misrepresentations, a large percentage of the policy holders were induced to transact business with it."

The defendants answered the amended complaint and put in issue the allegations thereof to which reference has been made. The trial court found as a fact that the defendants, who were directors of the company, each executed subscription agreements called for by the statute in the sum of $12,500, amounting in the aggregate to $100,000, but no certificate of such subscriptions was ever filed with the insurance commissioner of the state; that the defendant directors agreed among themselves to furnish such sums of money to the company as might, from time to time, be necessary to pay the pressing obligations of the company, and, to make it certain that each would meet his share of such advances, it was agreed that collateral securities should be deposited with the company for that purpose, and securities consisting of stocks and mortgages were so deposited for the protection of the defendant directors as between themselves and for the purpose of securing some collateral or guaranty that the defendant directors would make the loans or advances to the company when such sums should be demanded, and for no other purpose; that upon the books of the company on June 1, 1898, entries were made showing that it had a paid-up capital of $100,000, and that each director was indebted to it

in the sum of $12,500; that during the month of June each director was credited, on account of assessments, with the sum of $1,125, which amount was charged back to him as having been repaid on the 30th day of the month; that on the next day the account of each director was credited with the sum of $12,500 and was thereupon balanced; and entries also were made upon the account books of the company showing real estate first mortgage loans to the amount of $37,500 and collateral loans secured by stocks and bonds to the amount of $62,500.

The evidence is practically conclusive that, when such subscriptions and securities were delivered to the company, it issued to each of the contributors a certificate which was in form and substance similar to the usual stock certificate; that thereafter the company represented to the public that it had a paid-up capital of $100,000, consisting of the securities deposited by the respective defendant directors; that such representations were made in its official reports to the insurance department of the several states in which it did business, also by a large majority of the policies issued by it; and by its business cards containing such statements, by circular letters, by letters to its local agents, and by other ways, it energetically and persistently advertised that it had a paid-up capital and assets of $100,000. It further appears from the policies issued by the company to the parties who have proved their claims in the insolvency proceedings herein on account of fire losses that it was stated on the face of nearly all of them that the company had a paid-up capital of $100,000. Such policies, with a few exceptions, contained no reference to any mutual liability, but were in form and substance cash or stock policies. See Dwinnell v. Kramer, 87 Minn. 392, 92 N. W. 227.

The finding of the trial court as to the representations of the company was to the effect following: That the company by its officers and agents wrote numerous letters to insurance agents in which, among other things, it was stated and represented that the company had been reorganized and had a paid-up capital of $100,000; that advertisements were published in which the resources of the company were represented to be as shown by the entries upon its books; that many of its printed forms and policies and much of its advertising matter were printed, circulated, and used, containing the representation that it had a subscribed capital of $200,000 and a paid-up capital

of $100,000; that upon some of the forms the word "mutual" in the
name of the company was inserted in an inconspicuous manner; that in
some of its signs and advertising matter the word "mutual" was omit-
ted, but generally and by express direction of its board of directors the
word "mutual" was included in the name of the company in such ad-
vertising matter. And, further, that each of the defendant directors
had actual knowledge of some of the representations or statements
herein found to have been made; that each of the directors could have
by reasonable inquiry ascertained the making of all such statements
and representations, and each had sufficient knowledge of the general
manner in which the business was being conducted and representations
made, and they were required, in the exercise of reasonable care and
in the discharge of their duties as directors, to have known of the mak-
ing of all such statements and representations. The trial court also
found in this connection that such statements and advertising matter
in the main contained information that the company was a mutual one
and gave sufficient notice to a person familiar with insurance matters
that the so-called paid-in capital was in fact not a fund available for
the payment of losses generally; and, further, that such statements and
representations did not deceive the insurance departments of several
of the states in which the company did business or insurance agents
generally.

Finding 17 of the trial court is in these words:

> That none of the policy holders of said company, nor any of
> its creditors, except Laura E. Heatherly, [as to whom direct
> proof of reliance upon the representation was made,] ever had
> any notice or knowledge whatever of the making of any of said
> representations as to the resources of said company, or as to
> any subscribed capital, or paid-up capital, or capital stock of
> said company. That none of said policy holders in, or creditors
> of, said company ever became policy holders in or creditors of
> said company in reliance upon or because they believed or re-
> lied upon any of said representations.

The plaintiffs moved the trial court to strike out the whole of this
seventeenth finding, and insert in place thereof a finding to the effect
following: That the creditors of the company were warranted in

relying, and did rely, upon the statements and representations found by the court to have been made. The motion was denied, and the ruling of the court is here assigned as error by the plaintiffs. They also assign as error the making of the seventeenth finding for the reason that it is not supported by the evidence. These two assignments raise the pivotal question in the determination of this appeal.

The question is whether reliance by the policy holders upon the representations and statements made by the company with the knowledge of the defendant directors, actual or imputable, will be presumed, or must actual reliance by the policy holder be shown in each particular case?

If actual reliance by each policy holder must be shown, then the finding complained of is supported by the evidence, and the motion to amend it was properly denied; but, if such reliance will be presumed, then as a matter of law the finding was wrong and the denial of the motion error. That the question raised by the assignment of errors is one of law and not of fact is clearly shown by the memorandum of the learned trial judge, which is made a part of his findings. The basis of the finding as stated in the memorandum, is this:

> It is because I am of the opinion that reliance upon any statement found herein to have been made by the defendant corporation, or any of its officers or agents, as to its resources, subscribed or paid-up capital, or capital stock, on the part of any policy holder or creditor, cannot be inferred or presumed merely from the fact that representations of the kind herein found to have been made were in fact made as found, that I have made the finding No. 17 that no policy holder or creditor did rely on such representations.

The finding that the insurance departments of several of the states were not deceived by the statements filed with them has but little, if any, relevancy to the question now under consideration. It would be a travesty of justice to permit the defendant directors, who knowingly or negligently allowed the representations to be made to escape liability, because, forsooth, those who were deeply read in the mistful lore of insurance were able to detect the vile fraud and were not deceived thereby. It is apparent, from the fact that the trial judge held

the defendants liable for the loss sustained by Laura E. Heatherly, that he attached no controlling importance to this particular finding. The representations and statements made by the company were of such a character and expressed in such a variety of forms as to induce prudent men seeking indemnity against loss of their property by fire to believe that the company had a paid-up capital and assets available for the payment of its losses in the sum of $100,000, and to rely upon the reputed financial standing which it gained by such representations.

It is the settled law of this state that, in an action by creditors of an insolvent corporation, or by a receiver acting for them, against it and its stockholders to recover from them the respective amounts, so far as may be necessary to satisfy the claims of creditors, unpaid upon stock held by them, whether it was issued as bonus stock or otherwise, it will be presumed that the creditors relied upon the professed capital stock of the corporation, and induced thereby gave it credit without direct proof of the fact. First Nat. Bank v. Gustin Minerva Con. Min. Co., 42 Minn. 327, 44 N. W. 198, 6 L. R. A. 676, 18 Am. St. Rep. 510; Hospes v. Northwestern Mnfg. & Car Co., 48 Minn. 174, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. Rep. 637; Hastings Malting Co. v. Iron Range Brewing Co., 65 Minn. 28, 32, 67 N. W. 652.

The rule we have stated is not controverted by the defendants, but they urge that it is not applicable to this case, for the reason that the company neither legally nor ostensibly had any power to create a capital or guaranty fund. This does not distinguish in principle the cases, for the reasons upon which the rule is based apply as well to this case. The rule is based upon reasons of convenience, public policy, and practical justice, which are stated by Justice Mitchell in the case of Hospes v. Northwestern Mnfg. & Car Co., 48 Minn. 174, 198, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. Rep. 637, in these words: "Inasmuch as the capital of a corporation is the basis of its credit, its financial standing and reputation in the community has its source in, and is founded upon, the amount of its professed and supposed capital, and every one who deals with it does so upon the faith of that standing and reputation, although as a matter of fact he may have no personal knowledge of the amount of its professed capital, and in a majority of cases knows nothing about the shares of stock held by any particular stockholder, or, if so, what was paid for them. Hence, in

a suit by such creditor against the holders of 'bonus' stock, he could not truthfully allege, and could not affirmatively prove, that he believed that the defendant's stock had been paid for, and that he gave the corporation credit on the faith of it, although, as a matter of fact, he actually gave the credit on the faith of the financial standing of the corporation, which was based upon its apparent and professed amount of capital."

Now it is perfectly apparent from the record in this case that the company, for the purpose of establishing its credit as a solvent company, and thereby to induce the business public to rely upon such credit and accept and pay for its policies, deliberately and steadfastly professed to have a paid-up capital and widely advertised the pretense with the knowledge of the defendant directors. It went so far as to place the representation upon the face of its policies which were cash or stock policies with no mutual features. Is it not reasonable then to presume that the insured relied upon the representations? Would not any other rule be inequitable and foster frauds of the character of this one? It would be impracticable, if not impossible, to call on the trial each policy holder and elicit from him an analysis of the mental processes which led him to accept and pay for his policy. Necessarily he must have relied upon its reputed financial standing in accepting his policy.

We hold that all creditors in this case, whose claims against the company are based upon cash or stock policies containing no express reference to any mutual liability (which we here designate as policies of the first class), are presumed to have relied upon the statements and representations of the company here in question, and that as to such creditors it was not necessary to make direct proof of such reliance by calling such creditors as witnesses. On the other hand, we hold that, as to creditors whose claims are based upon policies issued by the company which expressly provided for a mutual liability (which we here designate policies of the second class), it will not be presumed that they relied upon such statements and representations, for it will be presumed that they read their policies and were advised thereby of the true character of the company. It follows that the trial court erred in making its seventeenth finding of fact, and also in denying the plain-

tiffs' motion to amend the same, and, further, that for these errors the judgment must be reversed.

This brings us to a consideration of the practical question whether a new trial of all the issues in this case shall be granted, or the cause remanded with instructions to the district court to determine the respective amounts due to the creditors of the company whose claims are based upon policies of the first class, and to amend the seventeenth finding of fact, and its conclusions of law to the effect that such creditors did rely upon the representations as to the assets and paid-up capital of the company, and that the defendant directors are liable for the claims of such creditors, but are not liable for claims which are based upon policies of the second class. This court cannot make or amend findings of fact or direct it to be done, where the facts are in dispute, but, where, as in this case, the question whether or not a finding of fact should be amended is a question of law, this court will determine the question and direct the amendment accordingly, and thereby avoid the delay and expense of a retrial of the issues. We are of the opinion that this cause should be remanded with instructions as here indicated.

The plaintiffs raise the point that the judgment appealed from was wrong because the defendants were adjudged liable pro rata for the claims of creditors. To avoid any misunderstanding and a fourth appeal in this case, we deem it proper to state that the liability of the defendants is not simply pro rata, but each is liable to the amount of his subscription, so far as it may be necessary to satisfy the claims of the creditors, and that judgment should be entered against him on this basis with provisions for the execution of ratable executions, as was done in the case of Harper v. Carroll, 66 Minn. 487, 492, 69 N. W. 610, 1069.

Judgment reversed, and cause remanded to the district court for further proceedings therein not inconsistent with the opinion of the court herein.

On March 10, 1906, the following order was filed:

PER CURIAM.

Since the opinion herein was filed, our attention has been called, by an application for an amended order remanding the case and the stipulation of the parties, to certain issues, not involved in this appeal,

which satisfy us that the amendment should be allowed. Therefore it is ordered that the order remanding this case be, and it is hereby, amended so as to read as follows:

Ordered that the judgment appealed from be, and it is hereby, reversed, and the cause remanded for further proceedings not inconsistent with the opinion of the court herein, and, further, that the district court try, by a new trial or by amended findings upon the present record, according to its discretion, the following issues:

1. Whether the defendant Mareck is liable on any policies issued for debts contracted after his resignation.

2. Whether any of the defendant directors are entitled to any offsets.

3. Whether the defendant directors are liable on policies held by assignees of original policy holders.

4. Whether the defendants are entitled to any additional relief on account of settlements made by plaintiffs with other directors.

5. What claims are based on cash or stock policies, or policies of the first class, and whether defendants are liable to general creditors who are not policy holders.