IN THE MATTER OF THE ESTATE OF LUCY D. SIMMONS. FRANCES L. BOYNTON v. FRANK A. SIMMONS AND OTHERS.[1]

January 29, 1926.

No. 24,751.

**Former decision law of the case.**

1. Record of a second trial examined and *held* not to present new or different proof of such controlling character as to put the case beyond scope of former decision that a special verdict, finding undue influence in the execution of a new and the destruction of an old will, was sustained by the evidence.

**Destruction of old will result of undue influence.**

2. Where a new will is executed and an old one destroyed at the same time and as parts of the same transaction, a verdict (on the special question) that the new will was the result of undue influence, *held*, under the circumstances stated in the opinion, to control decision as to the destruction of the old will and so compel a finding that it was caused by the same undue influence.

**Case remanded with directions to trial court.**

3. The case having been tried twice with two verdicts of undue influence, it being the decision here on both appeals that the evidence sustains such a verdict and that it was error to set aside the second verdict and grant judgment notwithstanding, that order is reversed and the case remanded for decision and judgment consistent with the

[1]Reported in 207 N. W. 189.

verdict, unless the motion for a new trial be granted on grounds other than insufficiency of the evidence or that the verdict is contrary to law.

Appeal and Error, 4 C. J. p. 1110 n. 80.
Wills, 40 Cyc. pp. 1197 n. 85; 1339 n. 14; 1360 n. 83 New.

After the former appeal reported in 156 Minn. 144, 194 N. W. 330, the matter was tried before Johnson, J., and a jury which answered in the affirmative the question whether the execution of the 1916 will was the result of the undue influence of Miss Boynton. The subsequent proceedings are narrated in the second paragraph of the opinion. Frank A. Simmons and others appealed from the order setting aside the verdict and directing judgment in favor of respondent Boynton. Reversed and remanded.

*Shaw, Safford, Putnam & Shaw* and *C. S. Lowell,* for appellants.
*Morphy, Bradford & Cummins, C. C. McElwee, Thomas Mohn* and *A. J. Rockne,* for respondent.

STONE, J.

This will contest is here for the second time, the opinion on the first appeal appearing in 156 Minn. 144, 194 N. W. 330. It is unnecessary to restate the facts or much of the history of the case. Two wills are involved, one of February, 1911, and the other of May, 1916. The effort of Miss Boynton is to establish the latter and the revocation of the 1911 will. On the first trial, answering two special questions, a jury found that the destruction of the first will, which took place concurrently with the execution of the last, was induced by the undue influence of Miss Boynton, and that the new will itself was procured by the same influence. That view of the case was confirmed by the decision of the trial judge reviewed here on the first appeal. There was a reversal solely for an error in the charge, but in that connection the evidence was reviewed and it was held to sustain the verdict of undue influence. That question was necessarily for decision, for it was contended then that Miss Boynton (appellant then but respondent now) was entitled to

a decision notwithstanding the verdict. If that question had been resolved in her favor the error in the charge would have been ignored as immaterial.

At the end of the second trial the question of undue influence as an inducement to the destruction of the 1911 will was withdrawn from the jury. There was again submitted, however, the question as to whether the execution of the 1916 will was the result of the undue influence of Miss Boynton. The jury again said that it was. Before findings were made, respondent moved for the vacation of the verdict, for judgment in her favor and incidentally for a vacation of the order submitting the issues to the jury or, in the alternative, for a new trial of the issues so submitted. Without a separate order on that motion, the court made findings of fact, conclusions of law and order for judgment which had the effect of granting it. The decision vacates the verdict, finds all the issues, particularly that of undue influence, in favor of Miss Boynton and orders judgment in her favor establishing the 1916 will and directing its admission to probate. The appeal is by Frank A. Simmons and his sisters from the order for judgment.

Such orders are not ordinarily appealable, but this one is, because it passed upon the alternative motion of respondent for judgment or a new trial and granted judgment notwithstanding the verdict. In that connection we have noted the argument for respondent, based upon the supposed lapse of the legacies to Frank and Grace Simmons (stepchildren of the testatrix and so not entitled to take under our statute of descent), that they have no standing in court in opposition to the 1916 will. Without prejudice to the ultimate solution of the question, if again and definitely presented, we decline to hold, in the present state of the case, that those legacies have lapsed. The motion to dismiss the appeal must be and is denied.

Where in such actions as this issues of fact are submitted to a jury, the verdict, unless vacated, is not advisory merely (as it is in some other jurisdictions), but final and controlling. So far as the issue so submitted is decisive, the verdict governs decision.

Buzalsky v. Buzalsky, 108 Minn. 422, 122 N. W. 322, and cases cited. So, unless the evidence does not sustain the verdict, it was error to grant respondent's motion for judgment notwithstanding.

1. If the evidence at the second trial was in substance the same as that on the first, our former decision that the evidence then supported the verdict is the law of the case. For respondent it is urged that there is so much new evidence and the record now so different that our first decision is not controlling. The next step in the argument is that the present record, particularly the new evidence, did not sustain the verdict of undue influence, but on the contrary warranted the order vacating that verdict and granting respondent judgment notwithstanding. That is the argument which has most engaged our attention.

The evidence for appellants is in substance the same as before. There is also about the same evidence for respondent. Concerning that much of the record, nothing need be said and, if there were nothing more, the former decision would be the law of the case.

There is nothing in the testimony of the new witnesses for respondent, among them the Misses Stevens and McCormick, which controls the case. It helped respondent—how much was for the jury to say. We have examined with particular care the testimony of respondent herself. Concerning it we also conclude that it does not compel decision in her favor. She is a woman of marked ability and broad business experience. Starting from that clear premise, the jury might well have considered her testimony at times a bit evasive. As to certain important details she is flatly contradicted, even to the point of impeachment.

The 1916 will was put in final shape by Mr. Ewing of the St. Paul Bar. His selection for that purpose indicates sound judgment on the part of whoever selected him. But there is nothing to indicate why Mrs. Simmons, left to her own choice, would not have chosen an attorney long and well-known to her rather than a stranger. Her former will was drawn by a member of the Hastings Bar. The evidence is open to very strong inference that a stranger to the testatrix was selected as the draughtsman of the 1916 will by respondent herself.

When the 1911 will was attempted to be proved in the probate court as a lost or destroyed will, respondent's testimony was given after the service on her of a subpoena duces tecum requiring her to produce the original if she had it. For a long time that document had been in her possession. She knew that she would be required at that hearing to tell what she knew concerning it, its then whereabouts if in existence, and the circumstances of its destruction if destroyed. Before taking the witness stand on that first occasion, respondent was told (if in fact she had forgotten), by her confidential clerk, Miss Thompson (so the latter testifies), that the 1911 will had been destroyed. Notwithstanding, she went into the probate court and testified in part as follows:

Q. "I will ask you to examine Exhibit A (Copy of the 1911 will).
A. "I don't know anything about the will * * *.
Q. "Will you state whether it was destroyed?
A. "I don't know * * *.
Q. "I understand you don't know what became of it?
A. "I have an impression but I am not sure, I think it was turned over to Mrs. Simmons."

At the subsequent trials, respondent testified that on May 25, 1916, a few minutes after testatrix executed the 1916 will, in respondent's private office, in her presence and that of Miss Thompson, she destroyed the 1911 will by first tearing it into pieces, then placing the fragments on a dust pan and burning them, the ashes being taken to the furnace room by Miss Thompson. Such lapses of memory, perfectly honest, are not unknown to our experience. But when they appear testimonially, it is ordinarily for the triers of fact to say how and to what extent they affect evidence. The circumstantial detail of respondent's final narrative concerning the destruction of the 1911 will might well have aroused in the minds of the jury a serious question as to whether that final precise recollection of minute detail might not have been attended by enough guilty knowledge to have accounted for her initial failure to admit any knowledge at all.

Another argument is that the testimony of Judge Moran of the probate court of Dakota county, together with that of his clerk, Miss Austin, "destroys any foundation for the claim that Miss Boynton had anything to do with the making of the 1916 will." We cannot agree. A preliminary draft of the 1916 will was typed in Judge Moran's office by Miss Austin. Miss Boynton was not present. Judge Moran frankly stated at the outset that he was "not at all clear" in his recollection about the matter and on a former occasion his impression was that all he had to do with the tentative draft of the will prepared in his office (afterwards revised and put in final form by Mr. Ewing) was "to look it over." He did not dictate it to Miss Austin, who in her turn says that she prepared the draft "from notes * * * or * * * dictation." The testimony of the two is open to the inference that Mrs. Simmons came to Judge Moran's office with a new will pretty well formulated. That is as far as the testimony goes and, so far as respondent is concerned, only negatives her presence when the tentative draft of the will was transcribed by Miss Austin. At least that view was open to the triers of fact.

The foregoing comment indicates sufficiently both the argument for respondent concerning the effect of the new evidence and the basis for our conclusion that it is not controlling. However the whole case may be considered, even with particular stress on the new evidence for respondent, reasonable minds may differ. It cannot be said that the new evidence, while weighing in her favor, compels decision for respondent. A circumstance not to be lost sight of is that, while the testatrix recovered from the attack of mental disease which first sent her to a hospital for the insane, she never recovered from the disease itself, the disorder being maniac depressive of the circular or recurring type. In fact the malady caused her death. If the jury considered that her affliction had permanently impaired the mental resistance of the testatrix and made her more susceptible than she otherwise would have been to undue influence, this record does not permit us to say that there is no foundation for that opinion. There are other pertinent details

which require no comment. We have discussed the facts sufficiently to indicate the basis for our conclusion that it was error to set aside the verdict.

2. It is the law that "a will destroyed by the testator himself in his lifetime, acting under fraudulent and undue influence, is not considered to have been revoked, and may be admitted to probate on establishing facts showing the existence and due execution of the will, and its destruction by reason of such improper influence." 28 R. C. L. 168. The execution of the 1916 will and the destruction of its 1911 predecessor were so near a unitary transaction that it is impossible to divide them for the purpose of judicial consideration of their inducement. The conclusion is inescapable, that whatever motive resulted in the 1916 will also and concurrently caused the destruction of that of 1911. In company with respondent, the testatrix first executed the new will and within a few minutes; half an hour at the most, without having left the presence of respondent, she destroyed the old will as already indicated. There was but one transaction, indivisible as to inducement and purpose. Obviously, if such a single issue is divided, the answer to one branch as a matter of simple sense and logic must also be the answer to the other. Inasmuch therefore as the verdict on the one submitted to the jury is controlling, it would be inconsistent with orderly and logical procedure to permit an opposite decision of the other by the court. The learned trial judge appreciated the situation, for he did not assume to decide either branch of the question without vacating the verdict. He recognized the obstacle and sought to remove it. But the controlling effect of verdicts cannot be escaped in that manner.

3. The situation is peculiar. We dispose favorably to the appellants of their assignment of error predicated on the vacation of the verdict and the order for judgment notwithstanding. So far as the order appealed from vacates that verdict, it must be reversed and the verdict reinstated. The verdict, for the reasons already discussed, being considered as controlling the question of undue influence as the inducement of both the new will and the destruction of the old, it is clear that the decision on the latter branch of the question should follow the verdict upon the other.

In any event the order appealed from must be reversed and all of the decision inconsistent with the verdict vacated. Our final problem has to do with the conditions upon which the case shall be remanded. As long as an issue remains one of fact we have no power, in the exercise of our appellate jurisdiction, to decide it or direct its decision one way or the other. But when the question whether a given finding of fact should be made or one already made amended, becomes one of law, as occasionally it does, this court may determine the question finally "and thereby avoid the delay and expense of a retrial of the issues." Dwinnell v. Minneapolis F. & M. M. Ins. Co. 97 Minn. 340 (348), 106 N. W. 312, 315. In this case the single and controlling issue has been *twice* decided the same way by verdict and this court has said, *for the second time*, on sufficient evidence. The case is thereby distinguished from Kies v. Searles, 146 Minn. 359, 178 N. W. 811; Central Met. Bank v. Fidelity & C. Co. 159 Minn. 28, 198 N. W. 137, and Parker v. Fryberger, 165 Minn. 374, 206 N. W. 716, wherein on a first appeal, a motion for new trial not having been passed upon below and this court considering that it was error to order judgment non obstante, the cause was remanded for action below on the pending motion for a new trial. Those cases did not have the element, so prominent and controlling here, of a verdict twice sustained on appeal against the objection of the insufficiency of the evidence to support it. After a decision so made, and so repeated and confirmed, it cannot be said that there is any discretion left in the trial judge to grant a new trial, except upon grounds other than insufficiency of evidence. Subject to that, the disposition of the case becomes a matter of law. A verdict so repeated and confirmed is final and controlling. Any other rule would invite a repetition of trials and a prolongation of litigation which would indicate judicial feebleness and result in subjecting the administration of justice to deserved disrepute.

This litigation should be terminated if there is opportunity for that result without injustice. Certainly there can be no injustice, in any proper sense, to respondent if the case is terminated now (subject to the conditions stated below), after she has twice had the

opportunity of trying the crucial question of undue influence. The case has been tried twice very thoroughly. The ends of justice require that the order appealed from be reversed, the attending findings of fact and conclusions of law vacated and the case remanded for the substitution of findings of fact, conclusions of law and order for judgment consistent with the verdict, unless respondent's motion for a new trial be granted on grounds other than the claim that the verdict is not justified by the evidence or is contrary to law.

So ordered.

WILSON, C. J. (dissenting.)

I agree that there must be a reversal, but I do not agree that judgment should be entered. This appeal brought to us an order for judgment made on an alternative motion for judgment non obstante or a new trial. Our reversal of the order for judgment leaves the motion for a new trial for disposition by the trial court. Parker v. Fryberger, 165 Minn. 374, 206 N. W. 716; Central Met. Bank v. Fidelity & C. Co. 159 Minn. 28, 198 N. W. 137; Kies v. Searles, 146 Minn. 359, 178 N. W. 811.

DIBELL, J. concurs in dissent.