IN THE MATTER OF THE ESTATE OF S. PETERSON, ALSO
   KNOWN AS SVANTE PETERSON, ALSO KNOWN
   AS SWANEY PETERSON, DECEASED.

MILDRED JANE CLOSE, APPELLANT, *v.* R. S.
   FLANARY, EXECUTOR, R. S. FLANARY, JUA-
   NITA D. FLANARY, FRANCES ATKINSON,
   VERN HURSH, NEVADA CHAPTER OF THE
   NATIONAL FOUNDATION FOR INFANTILE
   PARALYSIS, ABSENT HEIRS, AND JULIA
   ERSKINE, RESPONDENTS.

No. 4143

May 15, 1959                                    339 P.2d 379

See also 73 Nev. 194, 314 P.2d 379.

*Nada Novakovich,* of Reno, for Appellant.

*Lohse and Fry,* of Reno, for Respondents R. S. Flan-
ary and Juanita Flanary.

*Bible and McDonald,* of Reno, for Respondent Nevada Chapter of the National Foundation for Infantile Paralysis.

*Stanley H. Brown,* of Reno, for Respondents Frances Atkinson and Vern Hursh.

*Harold O. Taber,* of Reno, for Absent Heirs.

**OPINION**

By the Court, BADT, J.:

This is an appeal from an order and judgment dismissing a petition for revocation of probate of the alleged last will of decedent, made at the conclusion of a preliminary trial to determine the status of the petitioner as an interested person. Petitioner, sole beneficiary under an earlier will, which the proponents of the later will contend had been revoked, had objected to the motions for separate trial of this issue of whether petitioner was an interested person and, after the overruling of such objection, demanded a jury trial, which demand was rejected by the court.

Although the appellant's brief contains 33 assignments of error, each of which she asserts entitles her to a reversal, we need consider only one, as we are satisfied that the court erred in denying trial by jury, under specific statutory provisions, of the issues raised.

NRS 137.010 provides for the contesting of a will by "any person interested." NRS 137.020 provides: "Any issue of fact involving the competency of the decedent to make a last will and testament, the freedom of the decedent at the time of the execution of the will from duress, menace, fraud or undue influence, the due execution and attestation of the will, or any other question substantially affecting the validity of the will, shall be tried by the court unless one of the parties demands a jury. * * *" With reference to a petition, after probate, for the revocation of such probate, NRS 137.080 and 137.100 require that proceedings be had thereunder as in the case of a contest before probate.

Mildred Jane Close, the appellant herein, in her petition for revocation of probate, alleged that under a will of the decedent dated May 4, 1953, and which was duly executed, attested and subscribed according to law, when the testator was of sound and disposing mind, she was the sole beneficiary and was named as executrix; that under the will of May 27, 1955, revocation of whose probate was sought, Raymond S. Flanary, Juanita D. Flanary, his wife, Frances Atkinson, Vern Hursh, Nevada Chapter of the National Foundation for Infantile Paralysis, Charles Peterson and Julia Erskine were named as the legatees of the estate valued at $130,000, and that Raymond S. Flanary was named as executor; that the will of 1955 was not the last will and testament of the decedent; that the same is invalid; that the decedent was not, at the time of the execution of said 1955 will of sound mind and memory, but was by reason of extreme age and protracted sickness mentally incapacitated; that said will of 1955 was not executed, attested and subscribed in conformity with the requirements of the laws of the State of Nevada; that the signature to said 1955 will is not the signature of the decedent and was not signed by the decedent or by some person in his presence or by his express direction; that the purported signature is a forgery and was forged by the said Raymond S. Flanary; that said will was not attested by at least two competent witnesses subscribing their names thereto in the presence of said decedent;

that said will was procured by fraud and the undue influence of Raymond S. Flanary; that the decedent at the time was blind and had been blind for approximately 25 years prior to his death; that at the time of the purported execution of the 1955 will, decedent was 83 years of age; that Flanary was the attorney at law for the decedent at the time and bore a confidential and fiduciary relationship and the relationship of attorney and client with him at the time; that said Flanary prepared, typed, wrote and drew the purported will; that he actively participated in its execution, suggested its phraseology and drew the will upon his legal paper bearing his name and address; that under such will he was bequeathed the sum of $10,000 and his wife Juanita D. Flanary the sum of $5,000; that such bequests were unnatural and unreasonable and to which the said legatees had no natural claim, and that they were not the natural objects of the decedent's bounty; that the entire will comprised four typewritten pages, the purported signature of the testator appearing only on page 2, the remaining pages being taken up with the attestation clauses; that the bequests to Flanary and his wife appear on page 2; that Flanary had substituted said page 2 after the purported execution, attestation and subscription by the subscribing witnesses; that Flanary prepared, drew, signed, and substituted such page 2 subsequently to the purported attestation and subscription by the subscribing witnesses; that the bequests to the other legatees therein named were unnatural, unreasonable, and unjust and that such beneficiaries were not the natural objects of the testator's bounty and had no natural claim to his estate; that on May 11, 1955, which was 16 days before the execution of the 1955 will, Flanary entered safe deposit box No. 1808 in the Nevada Bank of Commerce, in Reno, Nevada, which box was in the name of decedent and the appellant Mildred Jane Close, from which he removed the will of 1953 (it appearing later that at such time he was accompanied by the decedent); that Flanary thereafter destroyed the 1953 will but had a copy in his possession (Flanary testified that he

destroyed it in his office on May 27, 1955 at the direction of the decedent).

The proponents of the will of 1955 admitted many allegations of the petition for revocation of the probate of that will, including the allegations concerning the execution of the 1953 will naming appellant as sole beneficiary. They denied all of the allegations as to lack of mental capacity, fraud, undue influence and forgery and denied the allegations that it was not executed, subscribed and attested in conformity with the law. They admitted the allegations of the testator's blindness, his age of approximately 83 years, the attorney-client relations between the testator and Flanary, the drafting and typing of the 1955 will by Flanary upon his stationery and the description of the bequests contained in the 1955 will. As affirmative defenses, they alleged that appellant was not an interested person in that the 1953 will had been revoked by being torn up and destroyed, and that appellant was estopped to assert lack of testamentary capacity in the testator.

Both the proponents of the will of 1955 and the absent heirs[1] filed motions for a separate trial upon the issue of the status of appellant as an interested party entitling her to contest the validity of the 1955 will. These motions were granted over the appellant's opposition.

Respondent R. S. Flanary resigned as executor, filed his accounting, and renounced his $10,000 legacy.

Under the issues as developed under this situation, the court, as noted, rejected appellant's demand for jury trial, tried the preliminary issue of plaintiff's status as an interested party before itself without a jury and found that on May 27, 1955, at Flanary's office, Flanary, at the testator's direction, destroyed the will of May 4, 1953, and on the same date decedent executed the 1955 will before the attesting witnesses, and that at the time he was mentally competent and of sound mind and had the mental ability and capacity to revoke the 1953 will. The court specifically found: "The evidence received by the court relative to the execution of the May 27, 1955

[1] The absent heirs in their pleadings attacked both wills.

will was admitted for the sole purpose and so considered by the court of determining the issue of whether or not there was a fraudulent destruction of the will dated May 4, 1953." The court specifically found that there was no evidence which would support the contestant's allegations of forgery and substitution and that the evidence was clear and convincing, that the legacy contained in said will to Raymond S. Flanary was freely and voluntarily made by decedent. The court specifically found that the presumption of fraud and undue influence had been completely rebutted.

As a conclusion of law the court found that the 1953 will had been revoked and that contestant was, therefore, not an interested person within the meaning of NRS 137.080, nor entitled to contest the 1955 will. Such findings and conclusions resulted from the consideration of testimony and exhibits now evidenced by seven large volumes. In other words, in order to determine interest, the court received and considered evidence relative to testator's competency, to fraud, and to undue influence existing at the time of the execution of the later will, which issues under NRS 137.020 should have been determined by a jury.

This record, including much expert testimony by experts in the field of questioned documents on both sides of the controversy, covered all the issues as above developed. These would be the precise issues to be tried in the main litigation touching upon the competency of the decedent to revoke the will of 1953, to execute the will of 1955 and his freedom at the time from duress, menace, fraud or undue influence, as well as the issue of due execution and attestation of the will and other questions substantially affecting the validity of the will, as to all of which issues specific right to a jury trial is accorded by statute.

Appellant's brief analyzes the evidence at length and attacks the court's findings of competency, mental capacity, lack of fraud and undue influence on the ground that they are not supported by the evidence. A consideration of this assignment is, fortunately, unnecessary.

Respondents support the court's denial of a jury trial

upon the general theory that it was proper to try the preliminary issue of appellant's interest without a jury. They rely on statements contained in In re Land's Estate, 166 Cal. 538, 137 P. 246. In that case the contestant received the identical legacy of $5,000 both in the first will and in the second will in issue, and so did not stand to win or lose by the admission of either one to probate. However, we may for the purpose of argument concede that under many situations the court could properly determine the contestant's interest in a preliminary trial without a jury. This is not such a situation. We refer again to the statutory provisions under which a party has a right to a jury trial. Directly in point is In re Simmons' Estate, 166 Minn. 65, 207 N.W. 189, 191, where the court said:

"The execution of the 1916 will and the destruction of its 1911 predecessor were so near a unitary transaction that it is impossible to divide them for the purpose of judicial consideration of their inducement. The conclusion is inescapable that whatever motive resulted in the 1916 will also and concurrently caused the destruction of that of 1911. In company with respondent, the testatrix first executed the new will, and within a few minutes, half an hour at the most, without having left the presence of respondent, she destroyed the old will as already indicated. There was but one transaction, indivisible as to inducement and purpose. Obviously, if such a single issue is divided, the answer to one branch as a matter of simple sense and logic must also be the answer to the other. Inasmuch, therefore, as the verdict on the one submitted to the jury is controlling, it would be inconsistent with orderly and logical procedure to permit an opposite decision of the other by the court."

Orr v. Love, 225 Ark. 505, 283 S.W.2d 667, 673. The court here approves the following rule quoted from 57 Am.Jur., Wills, sec. 461, p. 323, which in turn cites Simmons' Estate, supra:

"When a testator in destroying his will acts under fraudulent and undue influence, the will is considered not to have been revoked, and may be admitted to probate on establishing facts showing the existence and due

execution of the will and its destruction by reason of such improper influence. The execution of a will and the destruction of a former will may be so closely connected in point of time as to constitute one transaction, indivisible as to inducement and purpose, so as to render inescapable the conclusion that undue influence sufficient to invalidate the later will rendered the destruction of the former will ineffective as a revocation."

It may not be amiss, at this point, to make brief reference to the testimony of respondent Raymond S. Flanary, which constitutes the sole evidence, in connection with the destruction of the 1953 will and leading up to the execution of the 1955 will. From such testimony it appears that the testator a few days prior to the events of May 27, 1955 had caused the 1953 will to be withdrawn from his safe deposit box and to be left with Mr. Flanary at the latter's office; that on May 27, 1955 Flanary had drawn a new will pursuant to the testator's instructions, the testator called at his office, the 1953 will was destroyed by his instructions, whereupon they *immediately,* in Flanary's car, left Flanary's office in Sparks and proceeded to the bank in Reno where the 1955 will was executed. The elapsed time was less than two hours. There is no support for the contention of respondents that the destruction of the old will and its resulting revocation were entirely separate and independent from the execution of the new will. In fact they concede that had the revocation of the old will been accomplished simply by the revoking clause actually contained in the new will, a situation would have arisen under which the testator's mental capacity and freedom from undue influence would have been an issue for trial by jury, and not for trial as a preliminary issue before the court without a jury. Under the circumstances recited by Mr. Flanary himself and under the authorities above cited, we must reject the contention that the revocation of the 1953 will was an act independent of the execution of the 1955 will.

In thus narrowing the extent of our holding to the conclusion that the revocation of the earlier will and the execution of the later will constituted but "one

transaction, indivisible as to inducement and purpose" (Orr v. Love, supra) and that they were to all intents and purposes "a unitary transaction" (Simmons' Estate, supra), we do not as a consequence dispute the correctness of the rule stated In re Witt's Estate, 198 Cal. 407, 245 P. 197, to wit, that where, regardless of whether or not the unitary nature of the two transactions is present, the question of interest involved factual issues which the will contest itself presents, the contestant is entitled to a jury trial of such issues.

Order dismissing petition reversed with costs and cause remanded for trial before a jury.

McNAMEE, J., concurs.

MERRILL, C. J. (Concurring) :

I concur in the decision, but disapprove what seems to me to be a confusion of the legal consequences of two different situations :

(1) That in which the destruction of Will "A" and the execution of Will "B" are part of the same transaction.

(2) That in which factual issues involved in the question of interest also relate to the validity of the contested will.

In the first situation, if the destruction of Will "A" and the execution of Will "B" are part of the same transaction, the destruction has no standing as an independent event. It is merged, in a single transaction with the execution of Will "B," and the situation is as though no destruction had occurred at all. This is not because of fraud or undue influence in the revocation, or lack of capacity to revoke. It is simply because there was no independent revocation. It is, then, as though the sole means of revocation of Will "A" was the execution of Will "B." It is conceded that were this the case, appellant's interest would be established as a matter of law.

In the second situation, where we have identity of factual issues, interest has not been established as a matter of law but remains a factual problem. There should be no preliminary hearing to determine interest

in such a case, however, for to do so would be to deprive the contestant of a jury trial upon those very issues as to which the law expressly grants her a jury trial. In re Witt's Estate, 198 Cal. 407, 245 P. 197. The existence of a "unitary transaction" is not necessary to the application of this rule. On the contrary, it would seem to render the rule inapplicable, for in such a case no factual issues remain for determination upon the question of interest.

I would base this decision upon the ground of identity of factual issues and the rule applicable to such situation. Those facts which the majority has regarded as establishing a "unitary transaction" I would hold simply to demonstrate the existence of identical issues and the applicability of the rule against a separate trial upon the question of interest.