# PENN ANTHRACITE MINING COMPANY v. CLARKSON SECURITIES COMPANY.[1]

June 30, 1939.

No. 32,076.

[1]Reported in 287 N. W. 15.

518

*Otis, Faricy & Burger,* for appellant.

*Sanborn, Graves, Appel, Andre & Morton,* for respondent.

STONE, JUSTICE.

Trial to the court resulted in decision for plaintiff and order for judgment for upwards of $42,000. Defendant appeals from the order denying its alternative motion for amended findings in its favor or a new trial.

Plaintiff is engaged in the mining and selling of coal, its home office in Scranton, Pennsylvania. The Clarkson Coal & Dock Company is in the business of storing and selling coal for others on and from its docks at Duluth, Minnesota, and Ashland, Wisconsin. It will be convenient to mention it only as the dock company. The case arises from a contract of July 23, 1931, between plaintiff and the dock company. Shortly stated, that compact provided that plaintiff, during the 1931 season of navigation on the Great Lakes, would deliver to the dock company approximately 10,000 tons of anthracite coal, which the dock company was to receive, store, and sell for plaintiff. Title remained in plaintiff until sale, when it went directly to the purchaser. At no time was the dock company to have title to the coal. It was to "make settlement * * * as the coal is shipped from the docks on the last day of the month following shipment." Plaintiff was promised the sale price less $1.25 per ton, to cover "dockage, handling and sales commission,

and collection expense" of the dock company. There was an additional provision, which seemingly never became operative, giving the dock company some right to share in profits over and above a "basic price" of $10.60 per ton.

Plaintiff shipped over 11,000 tons to the dock company, all of which the latter sold. It did not pay for nearly 5,000 tons sold in the autumn of 1932. The judgment ordered for plaintiff was for an amount equal to the price of that coal, plus interest, but minus the dock company's commission.

Finding the dock company insolvent and recovery from it impossible, plaintiff has turned upon defendant, because, under assignment from the dock company, defendant took over the former's accounts receivable, which were proceeds of the sale of the coal. Defendant got all such accounts and has collected them, applying the money on a debt of the dock company to it. Specifically, the proof is that it took over the receivables representing the very coal which the dock company sold for plaintiff, for the sales of which it had accounted to plaintiff, but for which payment had not been made. It is because defendant so collected and retains the proceeds of plaintiff's property that the latter seeks redress in this action. More of the facts will appear later.

By complaint and evidence plaintiff presented and there have been litigated two grounds for recovery. First, there was a claim of fraud inducing the contract, with a trust resulting *ex maleficio*, making the dock company liable as trustee and binding defendant also because it took the trust property with knowledge of the trust. Secondly, plaintiff claimed that the contract made the dock company its *del credere* factor, with a trust resulting from the nature of that relationship.

The decision below, in its findings of fact, was expressly based upon the second ground. On the issue of fraud there was no finding one way or the other for the stated reason that in view of the solution favorable to plaintiff of the nature of the contract it was not "deemed necessary" to make any finding "as to the issue of fraud."

Plaintiff's claim of *del credere* agency we do not decide. The distinguishing thing about such an agency is that the factor becomes liable to his principal as guarantor for the purchase price. In this case the contract may not have intended that the dock company should become a mere guarantor. Rather, and the contract was actually so operated by the parties, the intent seems to have been that the dock company should sell the coal to its own customers without direction or control by plaintiff, and that it should become primarily liable for the purchase price, with no liability at all from purchasers to plaintiff. The argument for defendant is that, whatever the relation may have been up to the moment of sale, the dock company then became liable not as agent or trustee, but as simple contract debtor, for the price at which it sold, less the commission. That argument is based as to authority upon such cases as Aetna Powder Co. v. Hildebrand, 137 Ind. 462, 37 N. E. 136, 45 A. S. R. 194. We refrain from decision of that issue because upon the other one of fraud a decision for plaintiff upon the merits is inescapable.

■ That presents first a question of appellate procedure. Defendant urges that inasmuch as plaintiff is not an appellant it cannot urge as error the failure of the trial court, by an appropriate finding, to resolve the question of fraud one way or the other. That argument is sound to the extent that, because plaintiff is not an appellant, it may not assign error. It may not attack the decision at all. But that does not mean that it cannot stress any sound reason for affirmance. United States & I. C. C. v. American Ry. Exp. Co. 265 U. S. 425, 44 S. Ct. 560, 68 L. ed. 1087; Story Parchment Co. v. Paterson Parchment Paper Co. 282 U. S. 555, 51 S. Ct. 248, 75 L. ed. 544. Of course, if plaintiff had desired to attack the decision, as to amount or otherwise, a cross appeal would have been necessary. But, we repeat, if the record presents any good reason, even though it is not the one assigned by the trial judge, in support of the decision, plaintiff may use it. That is all that plaintiff is now doing in urging the question of fraud.

■ This court does not make or amend findings, or even direct that to be done where the facts are in dispute. But where an

issue is settled as matter of law by the record "this court will determine the question * * * and thereby avoid the delay and expense of a retrial of the issues." Dwinnell v. Minneapolis F. & M. Mut. Ins. Co. 97 Minn. 340, 348, 106 N. W. 312, 315. Long ago we adopted the course of determining the merits wherever it could be done with due regard to the limitations arising from the nature of our appellate jurisdiction. Gordon & Ferguson v. Doran, 100 Minn. 343, 111 N. W. 272, 8 L.R.A.(N.S.) 1049. It is the general rule that if a case has been fully developed at the trial and the facts are undisputed the reviewing court, even on reversal, "ordinarily will render final judgment, or will remand the case to· the lower court with directions to enter judgment in accordance with the opinion, or with specific directions, rather than direct a new trial." 3 Am. Jur., Appeal and Error, § 1203. It is because we consider that the record shows as matter of law that the contract between plaintiff and the dock company was induced by the latter's fraud that we decide that issue on the merits for plaintiff.

■ The facts of the fraud pleaded and proved by plaintiff may be summarized. Previous to this contract plaintiff had never sold coal at "the head of the lakes." It had never dealt with the dock company. While the determinative contract was being negotiated and before it was signed for plaintiff, the latter procured a mercantile agency's report (Bradstreet's), which consisted in part of a balance sheet purporting to show the assets, liabilities, and financial condition of the dock company. That report reflected the supposed facts, as stated to Bradstreet's as of March 31, 1931, by the president and auditor of the dock company. It exaggerated the value of assets, particularly receivables, to an aggravated degree. Any businessman studying the report with a view to contracting with the dock company would have assumed that the reported accounts receivable, amounting to $536,562.37, were good, that is, collectible. A relatively large number were so moribund and the debtors in such predicament financially (all was well known to the officials of the dock company who vouched for the figures) as to make a finding of fraudulent misrepresentation imperative. What is worse, the report did not disclose, as the fact was, that a large

part of the receivables had been assigned to defendant as security for advances made to the dock company. That illustrates the deceptive and damaging power of silence where there is imperative duty to speak the truth.

A finding that plaintiff did not rely upon the report could not be sustained. For plaintiff, reliance is testimonially affirmed, with no room for inference otherwise. Plaintiff considered the dock company good enough financially so that it relieved of all credit responsibility the go-between which had initiated the negotiations. It was the custom of plaintiff to hold that broker, Hartwell & Son, primarily liable on all sales of coal which it negotiated for plaintiff. It did not do so in this case, accepting instead the obligation of the dock company.

Defendant offered no evidence to justify the information given to Bradstreet by and for the dock company. That information and the Bradstreet report reflecting it are held fraudulent as matter of law. There is no question of fact. Hence we are at liberty to dispose of the case finally and would be remiss if we did not.

■ It is law that "where the owner of property transfers it, being induced by fraud, duress or undue influence of the transferee, the transferee holds the property upon a constructive trust for the transferor." Restatement, Restitution, § 166. That trust includes the proceeds of the property.

■ The decision below charges defendant with notice of the terms of the contract between plaintiff and the dock company; with knowledge that the resulting receivables were the proceeds of plaintiff's coal; and that they were held in trust for plaintiff. That finding also is inescapable on the record. Because of the relationship between defendant and the dock company, the former simply could not have become a purchaser in good faith.

Both defendant and the dock company are corporations, with their proper status and rights as such. But all through there has been between them such unity of interest and conduct that, if they were individuals instead of corporations, one would have to be charged with whatever notice or knowledge was possessed by the other in respect to the determinative transactions.

The contract was made and signed for the dock company by Mr. Worrell Clarkson. He was then and all through has remained the president of both dock company and defendant. (He had signed the dock company's report of March 31, 1931, to Bradstreet's.) As to management, the inference is inescapable that they were one-man corporations, and Mr. Clarkson the man. All along he has owned or controlled about all the stock of the dock company. His wife owns and has owned most of the stock of defendant. She has had nothing to do with its management, leaving all that to Mr. Clarkson. Defendant all along has done the financing for the dock company, and, better to secure itself, put two of its own employes into the office of the dock company. Although they were doing the office work for the dock company, they were, according to the evidence, functioning also as "the agents of the Securities Company." During the whole period the two companies have occupied the same office suite—rent paid by the dock company.

With such interlocking of common affairs in the everyday business of two individuals, no court would hesitate to charge one with knowledge possessed and notice had by the other in respect to transactions within the scope of their mutual interest. The fact that two corporations occupy the scene presents no factor of decision peculiar to the law of corporations (see In re Trust Under Will of Clarke, 204 Minn. 574, 284 N. W. 876), except that such knowledge or notice as is imputed to either of them must be that of some or all of the persons to whom its management has been confided. That is enough to explain our conclusion, in agreement with that of the trial court, that defendant is properly charged with notice of the contract between plaintiff and the dock company, and obligations resulting therefrom. Solway State Bank, by Veigel, v. School Dist. No. 26, 179 Minn. 423, 229 N. W. 568; Munroe v. Harriman (2 Cir.) 85 F. (2d) 493, 111 A. L. R. 657.

The problem is not one of conductor or nonconductor of liability. 39 Yale L. J. 193; Garber v. Bancamerica-Blair Corp. 205 Minn. 275, 285 N. W. 723. We are not holding defendant for the acts of the dock company as a subsidiary or agent. We hold defendant for its own corporate wrong. That is because the conductor of notice

(rather than liability)—the interwoven management and interests of the two corporations—communicated knowledge to defendant as fully and promptly as to the dock company.

It is of no avail to defendant that it paid face value for the dock company's receivables. See Bank of Farmington v. Ellis, 30 Minn. 270, 15 N. W. 243; Wright v. Larson, 51 Minn. 321, 53 N. W. 712, 38 A. S. R. 504. (It took them as security for advances it had made to the dock company.) There are cases where sufficient consideration makes a *prima facie* case of good faith. But when the evidence is all in the purchaser cannot be held to be one in good faith unless he bought without notice. The finding is compelled that from the inception of the transaction defendant had as much notice as the dock company and all the knowledge throughout that the dock company possessed. In view of the common management, common interests, and intimate relationship of the two corporations, only extreme naïveté could reach any other conclusion.

■ In December, 1932, plaintiff took from the dock company a promissory note for the unpaid balance. Defendant cannot seriously contend that this note was accepted as payment and so operated to discharge the obligation. It did not so operate "unless expressly given and received as absolute payment; and the burden of proof is upon the party asserting the fact to show that it was so given and received, * * *" Hirleman v. Nickels, 193 Minn. 51, 55, 258 N. W. 13, 15. There is no evidence that the note was accepted as payment or that it could otherwise discharge the debt.

■ But that is not all. In 1934 the plaintiff sued the dock company and got judgment on its note. Plaintiff then had a receiver appointed for the dock company, but without much harvest of money. For defendant it is contended that suit on the note, with judgment and receivership, was an election of remedies and so a bar to this action.

The argument misfires. Defendant was no party to the note. Its liability is that of joint tortfeasor with the dock company. The latter's note did not discharge the debt. Neither did the judgment. The merger by the judgment of the dock company's note but confirmed and continued the obligation. It had no destructive effect

upon anything save a possible claim of plaintiff for an amount in excess of the judgment. John Hancock Mut. L. Ins. Co. v. Meester, 173 Minn. 18, 216 N. W. 329. Attempts to collect by execution or receivership were sterile, except as resulting payments reduced the amount due, which was fixed, if it needed fixing, by the note.

A party is put to election only between inconsistent remedies. There is no occasion for election when remedies are consistent with one another. Mantz v. Sullwold, 203 Minn. 412, 281 N. W. 764. Between plaintiff's remedy on the note of the dock company and its cause of action in tort against defendant there was no inconsistency. The two were jointly and severally liable for the tort. Plaintiff could pursue one or both. In such a case it is satisfaction, and not judgment, which raises the bar.

Whatever decision law was formerly, it is now the settled rule that one who has obtained separate judgments against joint tortfeasors may pursue one as far as he likes, and, failing to procure satisfaction, have execution against one or more of the other judgment debtors. Ferhoeks v. Gillivan, 244 Mich. 367, 221 N. W. 287, 65 A. L. R. 1083; Ketelsen v. Stilz, 184 Ind. 702, 111 N. E. 423, L. R. A. 1918D, 303, Ann. Cas. 1918A, 965. In each of these cases earlier authority to the contrary was disapproved and the law declared as above stated. It is the rule here. Engstrand v. Kleffman, 86 Minn. 403, 90 N. W. 1054, 91 A. S. R. 359. See also First Nat. Bank v. Flynn, 190 Minn. 102, 250 N. W. 806, 92 A. L. R. 1272, and 34 C. J. p. 981. Our statute, 2 Mason Minn. St. 1927, § 9411, so declares as to contractual obligations.

On this point defendant mistakenly relies upon DeCock v. O'Connell, 188 Minn. 228, 230, 246 N. W. 885, 248 N. W. 829, 86 A. L. R. 41. There the new contractual obligation was accepted by the injured party "in full payment and satisfaction" of the original claim in tort. That of course was a complete substitution of the new undertaking for the old, and so discharged the latter and all liable thereon.

Order affirmed.

Mr. Justice Hilton, being incapacitated by illness, took no part.