Jeffrey HUNT, a minor, by Gary HUNT,
his father and natural guardian, and
Gary Hunt, individually, Appellants,

v.

William SHERMAN, et al.,
etc., Defendants,

v.

Gary HUNT and Mrs. Gary Hunt,
Third-Party Defendants,

v.

SHEET METAL WORKERS LOCAL 547
HEALTH AND WELFARE FUND, a
Trust, Respondent.

No. CO–83–370.

Supreme Court of Minnesota.

March 16, 1984.

Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for appellants.

James A. Blomquist, St. Paul, for respondent.

PETERSON, Justice.

On July 23, 1981, plaintiff Jeffrey Hunt seriously injured his right hand when it was caught in the cutting blade of a power lawnmower operated by defendant William Mohr. Jeffrey's father, plaintiff Gary Hunt, brought suit in Ramsey County District Court seeking damages for personal injuries to his son resulting from negligence by an adolescent lawnmower operator and negligent entrustment by the minor's parents. The suit was settled between the parties for payment of the policy limits of $100,000. The parties, in their settlement, agreed that the award in that amount did not fully compensate Jeffrey for his injuries. The district court judge approved the settlement and ordered plaintiffs to pay intervenor/respondent, Sheet Metal Workers Local 547 Health and Welfare Fund, the sum of $8,371.17 as reimbursement for medical expenses. Plaintiffs appeal from the order and from the subsequent judgment. We affirm.

Sheet Metal Workers Local 547 Health and Welfare Fund (the Plan) is an employee welfare benefit plan pursuant to the Employee Retirement Income Security Act (ERISA) §§ 1–514, 29 U.S.C. §§ 1001–1144 (1976 & Supp. V 1981). Gary Hunt is a participant in the Plan, and his son, Jeffrey, is a covered dependent. The Plan sought reimbursement in accord with its subrogation provision, Section VI, Subsection N, which, in pertinent part, reads:

> This plan is subrogated to the extent of any payment or intended payment of benefits by this plan for health care coverage to each participant's right of recovery therefor under any liability, casualty program, insurance or self-insurance program which is or becomes obligated to pay benefits to the participant or a dependent of the participant. * * * Any amounts recovered by or on behalf of the participant or his dependents shall be apportioned as follows:
>
>> This plan shall be reimbursed to the extent of any payments made by the plan to or on behalf of a participant or his dependents. If any balance then remains from such recovery, it shall be applied to reimburse the participant * * *. The plan shall not be liable for any expenses in connection with such recovery of monies unless the plan

shall have agreed in writing to bear a proportion of all of the expenses * * *.

The primary issue presented on appeal is whether ERISA, §§ 1–514, 29 U.S.C. §§ 1001–1144 (1976 & Supp. V 1981), preempts the application of state subrogation law, as set forth in *Westerndorf v. Stasson*, 330 N.W.2d 699 (Minn.1983), to the Plan in this case.

Congress enacted ERISA in 1974 to protect participants of employee benefit plans and their beneficiaries from the abuses which previously existed in many retirement plans. *See* Note, *ERISA: Preemption of State Health Care Laws and Worker Well-Being*, 1981 U.Ill.L.Rev. 825, 825. The term "employee benefit plan" is defined as including both pension plans and welfare plans. *See* § 3(3), 29 U.S.C. § 1002(3). "The statute imposes participation, funding, and vesting requirements on pension plans. * * * It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." *Shaw v. Delta Air Lines, Inc.*, —— U.S. ——, ——, 103 S.Ct. 2890, 2896–97, 77 L.Ed.2d 490 (1983).

To protect the participants of the plans, ERISA contains broad enforcement provisions, including criminal and civil penalties. *See* §§ 501–514, 29 U.S.C. §§ 1131–1144. As part of this enforcement scheme, Congress provided in section 514(a), 29 U.S.C. § 1144(a), for pre-emption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"[1] covered by ERISA. State laws regulating insurance, banking, or securities are exempt from this pre-emption provision, as are generally applicable state criminal laws. *See* § 514(b)(2)(A), (b)(4), 29 U.S.C. § 1144(b)(2)(a), (b)(4).[2] For purposes of section 514, the term "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." *See* § 514(c)(1), 29 U.S.C. § 1144(c)(1).

The United States Supreme Court in *Shaw v. Delta Air Lines, Inc.*, —— U.S. ——, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), resolved the lower courts' disagreement about the scope of ERISA's pre-emption provisions. *See id.* at ——, 103 S.Ct. at 2899. After reviewing Congress' intent in enacting ERISA, the Court concluded that

Congress used the words "relate to" in § 514(a) in their broad sense. To interpret § 514(a) to preempt only state laws specifically designed to affect employee benefit plans would be to ignore the remainder of § 514. It would have been unnecessary to exempt generally applicable state criminal statutes from preemption in § 514(b), for example, if § 514(a)

---

1. The full text of section 514(a), 29 U.S.C. § 1144(a), provides:

 (a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

2. The full text of section 514(b), 29 U.S.C. § 1144(b), provides:

 (b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

 (2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

 (B) Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

 (3) Nothing in this section shall be construed to prohibit use by the Secretary of services or facilities of a State agency as permitted under section 1136 of this title.

 (4) Subsection (a) of this section shall not apply to any generally applicable criminal law of a State.

applied only to state laws dealing specifically with ERISA plans.

Nor, given the legislative history, can § 514(a) be interpreted to pre-empt only state laws dealing with the subject matters covered by ERISA—reporting, disclosure, fiduciary responsibility, and the like. The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected these provisions in favor of the present language, and indicated that the section's pre-emptive scope was as broad as its language.

*Id.* at ——, 103 S.Ct. at 2900–01 (footnote omitted). The Court went on to hold that, "Given the plain language of § 514(a), the structure of the Act, and its legislative history, * * * the Human Rights Law and the Disability Benefits Law 'relate to any employee benefit plan' within the meaning of ERISA's § 514(a)." *Id.* at ——, 103 S.Ct. at 2901.

The only remaining issue for the *Shaw* Court was whether any of the narrow exceptions to § 514(a) save these laws from pre-emption. *Id.* at ——, 103 S.Ct. at 2902. The Court held that New York's Human Rights Law was pre-empted with respect to ERISA benefit plans only insofar as it prohibits practices that are lawful under federal law and that the Disability Benefit Law was not pre-empted by ERISA. *See id.* at ——, 103 S.Ct. at 2906.

 In the instant case, plaintiffs contend that the state subrogation law, as set forth in *Westendorf v. Stasson,* 330 N.W.2d 699 (Minn.1983), does not "relate to" the Plan.[3] To support this position, plaintiffs rely on a footnote in the *Shaw* opinion, where Justice Blackmun states:

"Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* —— U.S. at ——, n. 21, 103 S.Ct. at 2901 n. 21. Plaintiffs assert that the state subrogation law at issue is such a law. This position, however, is untenable because, if we were to apply *Westendorf* to the ERISA Plan, the Plan's own subrogation provision would be totally eviscerated. Therefore, under the facts of this case and in light of the Supreme Court's broad interpretation of section 514(a) in *Shaw,* we hold that the state subrogation law embodied in *Westendorf* does "relate to" the Plan. *See id.* at ——, 103 S.Ct. at 2900.

Alternatively, plaintiffs argue that if the state subrogation law in *Westendorf* does "relate to" the Plan, ERISA does not pre-empt *Westendorf's* application because the state subrogation law in question comes within the insurance law exception to pre-emption under section 514(b). *See* § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A). Although it is true that section 514(b) does not pre-empt state law dealing with insurance companies or with insurance contracts, the state subrogation law at issue in the instant case involves no insurance.

Intervenor's ERISA Plan is neither an "insurance company" nor an "insurance contract." It is a self-funded employee benefit plan whereby contributions on behalf of employees are pooled to provide medical benefits for Plan participants in accord with the collective bargaining agreement between the employees and their employers. Moreover, the benefits provided under the Plan are not funded or provided through insurance.

 Because the ERISA Plan in this case does not involve insurance, the insur-

---

3. Plaintiffs also contend that because intervenor failed to file a notice of review to preserve the pre-emption argument for appeal, the court is precluded from ruling on this issue. It is well settled, however, that a respondent may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, even though the argument may involve an attack upon the reasoning of the lower court or an

insistence upon matters overlooked or ignored by it. *See e.g., Penn Anthracite Mining Co. v. Clarkson Securities Co.,* 205 Minn. 517, 520, 287 N.W. 15, 17 (1939). *See also Dandridge v. Williams,* 397 U.S. 471, 475–76 n. 6, 90 S.Ct. 1153, 1156–57 n. 6, 25 L.Ed.2d 491 (1970). Because the issue of ERISA pre-emption has been fully argued both here and in the trial court, consideration of the pre-emption claim is appropriate.

ance exception is wholly inapplicable. Accordingly, we hold that ERISA pre-empts any application of the state subrogation law embodied in *Westendorf* to the instant case.[4] We affirm the trial court's ruling that in accordance with the Plan's subrogation provision, intervenor should be reimbursed for its medical payments made on plaintiffs' behalf.

Affirmed.

YETKA, Justice (dissenting).

I dissent on the ground that the Plan is really an insurance contract, bringing it within the exception provided by section 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A). We should attempt to preserve state law whenever it is not clear that federal pre-emption is mandated. Thus, the case comes under the rule of our *Westendorf* decision and the insurer should not be reimbursed until the injured party is compensated in full.

---

**4.** Because we hold that the state subrogation law at issue does not come within the insurance law exception of section 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A), we need not discuss the "deeming" clause analysis of section 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B), argued by the parties.