**BADGER EQUIPMENT COMPANY, Appellant,**

v.

**William BRENNAN, et al., Tri–State Insurance Company of Minnesota, Respondents.**

**No. C1–88–1031.**

Court of Appeals of Minnesota.

Nov. 29, 1988.

bursed from Roger's personal injury settlement proceeds. We affirm.

## FACTS

William Brennan is an employee of Badger and is covered by an employee benefit plan which operates under the Employee Retirement Income Security Act of 1974 (ERISA). The plan provides medical benefits for covered employees and their dependents.

On July 25, 1983, William's son Roger was injured while riding a motorcycle which was owned by Patrick Klinger. Roger was covered under Badger's plan as a dependent. As a result of the accident, Roger incurred medical bills and attorney fees in excess of $14,000, of which the plan paid $10,194.74.

The Brennans brought a cause of action in negligence against Klinger for allowing Roger, who was then a minor, to ride his motorcycle. In their complaint, Roger sought recovery for personal injuries and William sought recovery for medical expenses.

Prior to bringing the action against Klinger, William signed a subrogation agreement wherein he agreed to reimburse Badger if he were to receive a settlement that included an award for medical expenses that Badger had paid. There was also a separate generic subrogation agreement contained in the plan that applied to all employees. Upon receipt of the complaint, Klinger tendered the claim to Tri-State, his insurer, which answered the complaint and defended him.

The Brennans and Tri-State negotiated a settlement prior to November 12, 1985. Since Roger was a minor, a petition for minor settlement was filed. Badger was given notice of the petition and intervened. Badger claimed that the entire amount of the settlement ($8,500) should be returned to Badger's plan because of a subrogation clause in the plan. Because the parties were unable to agree on the distribution of the settlement, the petition for minor settlement was withdrawn.

Steven R. Peloquin, Streater, Murphy, Gernander & Forsythe, P.A., Winona, for Badger Equipment Co.

Duane M. Peterson, Duane M. Peterson, Ltd., Winona, for William Brennan, et al.

Douglas A. Boese, Dunlap, Keith, Finseth, Berndt & Sandberg, P.A., Rochester, for Tri-State Ins. Co. of Minnesota.

Heard, considered and decided by SCHUMACHER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

FOLEY, Judge.

This appeal is from a summary judgment granted to respondents William Brennan, Roger Brennan and Tri-State Insurance Company of Minnesota. Appellant Badger Equipment Company paid for medical expenses for Roger Brennan, son of William Brennan. Roger collected a settlement from Tri-State for his personal injuries, not for medical expenses. The trial court held that Badger was not entitled to be reim-

On February 5, 1986, Roger reached the age of majority. On March 30, 1986, he entered into a *Naig*-type settlement with Tri–State. The settlement awarded Roger $7,000, released Klinger for any claims which Roger may have had against him, and specifically reserved Badger's interest as subrogor or otherwise.

On March 24, 1987, Badger filed a complaint against the Brennans and Tri–State, claiming that Badger was a third party beneficiary under the settlement reached between Roger and Tri–State and, as such, was entitled to the money which it had paid for Roger's medical expenses. Badger also brought an action against Tri–State alleging breach of contract and claiming that Tri–State's payment to Roger was in derogation of Badger's rights because Badger had given notice to Tri–State that it was the appropriate payee in the event of settlement. Tri–State denied the claims and counterclaimed against Badger alleging abuse of process, interference with contract, malicious prosecution, and bad faith.

The trial court granted the motions for summary judgment brought by the Brennans and Tri–State and found that Badger was not entitled to any of the settlement proceeds which Roger had received from Tri–State because the proceeds compensated Roger for his personal injuries, and not for his medical expenses.

## ISSUES

1. Did the trial court err in concluding that Badger did not have any claim to the settlement proceeds received by Roger for his personal injuries?

2. Did the trial court err in concluding that Tri–State, as the insurer of the alleged tortfeasor Klinger, did not have a duty when it entered into the *Naig*-type release with Roger to protect the rights of Badger, which was asserting the subrogation claim against Klinger?

## ANALYSIS

On appeal from summary judgment, it is the function of the appellate court to deter- mine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *Hunt v. IBM Mid America Employees Federal Credit Union*, 384 N.W.2d 853, 855 (Minn.1986). *See also* Minn.R.Civ.P. 56.03. Further, where only questions of law are at issue, we are free to conduct an independent review of the case. *Service Oil, Inc. v. Triplett*, 419 N.W.2d 502, 503 (Minn.Ct.App. 1988), *pet. for rev. denied* (Minn. April 20, 1988).

1. Badger claims it is entitled to the settlement proceeds Roger received for his personal injuries. The settlement included payment for personal injuries only, and not for medical expenses. Since Roger was a minor at the time of the accident, William had a duty to pay for his medical expenses. In *Faber v. Roelofs*, 298 Minn. 16, 212 N.W.2d 856 (1973), the supreme court addressed the difference between claims by parents for medical expenses and claims by children for their injuries:

> This court has long recognized that the responsible parent of an injured child has a right of action for the injured child's medical expenses. * * * Although the parent's action is subject to any defenses that could be urged against the child, * * * the parent's action and the child's action are essentially separate. Prosser, Torts (4 ed.) § 125. For example, *a judgment against the child does not bar a later action by the father for medical expenses incurred as a result of his child's injury.*

*Id.* at 25, 212 N.W.2d at 862 (emphasis added).

Here, William had a duty to pay for Roger's medical expenses while Roger was a minor, and he did. When Roger reached the age of majority, he received a settlement from Tri–State for his personal injuries. William still has a cause of action against Tri–State for medical expenses, and Badger has all of the rights which it had before Roger's settlement for his personal injuries.

Badger argues that we should hold Roger responsible for reimbursing the medical

expenses which it paid and cites to several foreign jurisdictions in support of its position. While we acknowledge that other jurisdictions have held minors responsible for reimbursing medical expenses, we do not adopt that view upon these facts. We do not agree that Roger's settlement for his personal injuries should be turned over to Badger since the settlement did not include payment for medical expenses and since Badger is still able to recover its expenses in a different suit.

*The Naig–Type Settlement*

■ The parties refer to the settlement here as a *Naig*-type settlement. The Minnesota Supreme Court discussed this type of settlement in *Naig v. Bloomington Sanitation,* 258 N.W.2d 891 (Minn.1977):

> If an employee settles only those claims not subject to subrogation by the employer, the employer in no way is prejudiced by the settlement. It possesses not only the right to intervene in the employee's suit but also the right to maintain actions in its own name to enforce its subrogation rights and recover expenses for medical treatment.

*Id.* at 894.

Badger claims that it is entitled to recover the money which it paid for Roger's medical expenses. The agreement Roger signed specifies that the settlement was for his injuries:

> FOR THE SOLE CONSIDERATION OF $7,000.00 Dollars, * * * the undersigned hereby releases and forever discharges Patrick Klinger, * * * and all other persons * * * who might be claimed to be liable, * * * from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and *particularly on account of all injuries,* * * *.

(Emphasis added.)

The release was signed by Roger only, and not by William. The release also provided that Badger was not losing its right to make a claim for its own losses:

> It is specifically understood and agreed by and between the parties hereto that the release above described does not release or otherwise discharge any claim or cause of action or interest therein as subrogor or otherwise of the Badger Construction Equipment Company. It is understood and agreed that said interest is reserved and excepted from the release hereinabove described.

The trial court noted that Badger was notified of the settlement negotiations and of the intent to obtain a *Naig*-type settlement, and that Badger was invited to obtain any court order which it felt necessary for its own protection with regard to the settlement. The trial court also observed that Badger did not choose to exercise that right and should not now complain that its interests have been violated. Accordingly, the *Naig*-type settlement was proper.

*The Subrogation Agreements*

Badger argues that because two subrogation agreements exist which were signed by William, it should be entitled to the money Roger received. The first subrogation agreement is found in the employee plan, and provides in part:

> In the event of any payment for services under this Plan, the Plan shall to the extent of such payment, be subrogated to all the rights of recovery of the Covered Person arising out of any claim or cause of action which may accrue because of the alleged negligent conduct of a third party. Any such Covered Person hereby agrees to reimburse the Plan for any benefits so paid hereunder, out of any monies recovered from such third party as the result of judgment * * *.

Approximately six months after Roger's accident, Badger drafted a more specific subrogation agreement that William signed. This more specific agreement provides in part:

> In consideration of payments made or to be made by Badger Equipment Company ("Badger") under its Employee Benefits Plan, to or for the benefit of the undersigned, William B. Brennan, Jr., on account of injuries sustained by Roger A.

Brennan, minor son of the undersigned, as a result of a motorcycle accident on July 25, 1983, the undersigned hereby acknowledges and agrees that Badger is and shall be subrogated to all rights of recovery of the undersigned arising out of any claim or cause of action accruing to the undersigned as a result of the said accident against any third party.

■ Badger argues that both of these subrogation agreements govern here. The Brennans contend that the second subrogation agreement signed by only William is a substitute agreement and has modified the original subrogation agreement. In *Olson v. Penkert*, 252 Minn. 334, 90 N.W.2d 193 (1958), the Minnesota Supreme Court held:

> Parties can alter their contract by mutual consent, and this requires no new consideration, for it is merely the substitution of a new contract for the old one, and this is of itself a sufficient consideration for the new.

*Id.* at 347, 90 N.W.2d at 203. Accordingly, the later subrogation agreement signed by William controls. It was drafted by Badger, it was more specific, and it substituted for the generic subrogation agreement contained in the plan that applied to all employees.

Even if we were to consider both subrogation agreements valid, we have held that Roger's settlement compensated him for personal injuries only, and not for his medical expenses.

ERISA

Badger argues that the employee plan operates under ERISA and, as such, state subrogation law is preempted. ERISA provides for preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (1982).

Minnesota subrogation law is discussed in *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699 (Minn.1983). There, the Minnesota Supreme Court held:

> Absent express contract terms to the contrary, subrogation will not be allowed

where the insured's total recovery is less than the insured's actual loss.

*Id.* at 703.

In a factually similar case, the Minnesota Supreme Court held in *Hunt by Hunt v. Sherman*, 345 N.W.2d 750 (Minn.1984), that chapter 18 of ERISA preempted application of state subrogation law, as set forth in *Westendorf*, to a self-funded employee benefit plan whereby contributions on behalf of employees were pooled to provide medical benefits for the plan participants in accord with the collective bargaining agreement between the employees and their employers.

Although *Hunt* was factually similar, the *plan* in *Hunt* is not similar to Badger's plan. In *Hunt*, the subrogation agreement stated the order for payment:

> This plan shall be reimbursed to the extent of any payments made by the plan to or on behalf of a participant or his dependants. If *any balance* then remains from such recovery, it *shall be applied to reimburse the participant.*

*Id.* at 751 (emphasis added).

Here, it is clear that there is no order for priority of payment in either of the subrogation agreements, whereas *Hunt* provided that the plan would be paid first and any remaining proceeds would be paid to the participant.

■ ERISA clearly applies here as it did in *Hunt.* ERISA, however, does not by its terms automatically grant the employer a priority to payments received from a third party. 29 U.S.C. § 1001 *et seq.* (1982). Accordingly, because the Badger plan is silent as to the priority of payment, we will construe this ambiguity against the drafter, and absent a specific provision regarding priority of payment, we will apply Minnesota subrogation law as articulated in *Westendorf.* Even if we elected not to apply state subrogation law, we have held that Badger is not entitled to Roger's personal injury proceeds.

2. Next, Badger argues that it had the rights of a third party beneficiary because

Tri–State was aware of Badger's claims by virtue of knowing Badger had intervened when the settlement was sought to be approved. We disagree.

██ A third party may only recover on a contract for his benefit where he can establish an intent to make the third party a beneficiary of the contract, and that the performance of the contract by the promisor discharges a duty owed by the promisee to the third party. *Buchman Plumbing Co., Inc. v. Regents of the University of Minnesota,* 298 Minn. 328, 334–35, 215 N.W.2d 479, 483–484 (1974). Here, the facts establish that Tri–State and the Brennans had no intent to benefit Badger. The release did not discharge a duty owed by Badger, nor was it for the direct benefit of Badger. Further, there is no contractual relationship between Badger and Tri–State, and Badger has no claim to be a third party beneficiary where Tri–State and Roger settled the personal injury portion of their dispute through a *Naig*-type settlement without expressing an intent to benefit Badger. Further, Tri–State concedes that the *Naig*-type settlement made with Roger discharged all of the claims between them *except* for the medical expenses asserted by Badger in its intervention action, and the language in the release specifically preserves the claim of Badger.

Lastly, the terms of the subrogation portion of the ERISA plan created by Badger does not give Badger a priority to the payments made in a settlement. The language in the plan states that it shall be

> subrogated to all the rights of recovery of the Covered Person arising out of any claim or cause of action which may accrue because of the alleged negligent conduct of a third party.

In the *Hunt* case, the language used by the employer required that the proceeds of any settlement be used first to reimburse the plan before giving the balance to the employee. That language is not in the Badger plan, nor is it in the subrogation agreement signed by William.

Tri–State has admitted that it settled the nonmedical portion of the Brennans' claim without prejudicing Badger. It did not ignore the rights of Badger or make payment of proceeds which belonged to Badger. William has not given up his right to make a claim for medical expenses, and Badger has conceded that it is aware that the Brennan's have pledged their full cooperation in any lawsuit that may be pursued by Badger.

DECISION

AFFIRMED.