**BLUE CROSS/BLUE SHIELD OF RHODE ISLAND, Appellant,**

v.

**Evan FLAM, a minor, by his Guardian Ad Litem, Jerry Strauss, Respondent,**

**ROWLAND POINTE PARTNERSHIP, et al., Defendants,**

**Rowland Pointe Partnership, Defendant and Third–Party Plaintiff,**

v.

**Darryl FLAM, et al., Third-Party Defendants, Respondents.**

**No. C5–93–799.**

Court of Appeals of Minnesota.

Dec. 7, 1993.

Review Denied Feb. 24, 1994.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellant.

Tyrone P. Bujold, Susan Richard Nelson, Paul J. Harmon, Robins, Kaplan, Miller & Ciresi, Minneapolis, for Evan Flam.

Mitchell R. Spector, Abrams & Spector, P.A., Minneapolis, for Jerry Strauss.

William Lubov, Minneapolis, for Darryl Flam.

Considered and decided by HUSPENI, P.J., and CRIPPEN and SHORT, JJ.

## OPINION

HUSPENI, Judge.

Appellant Blue Cross/Blue Shield of Rhode Island challenges the district court's order denying its petition to intervene in an action between respondent Evan Flam, a minor, by his guardian ad litem, Jerry Strauss, and defendant Rowland Pointe Partnership. Appellant also challenges the district court's order denying its right to subrogation as a matter of law. We affirm in part and reverse in part.

## FACTS

In 1990, seven-year-old Evan Flam was severely injured when thousands of pounds of dirt caved in upon him on undeveloped land located next to his apartment complex. The land was owned by Rowland Pointe Partnership. Blue Cross/Blue Shield of Rhode Island (BCBS) paid a portion of Evan's medical expenses pursuant to an insurance policy issued to Evan's father, Darryl Flam.

In late summer 1992, BCBS received a letter from Evan Flam's attorney, informing it that respondent was attempting to settle his lawsuit against the defendants. The letter requested that BCBS waive its right to subrogation and suggested, in the event they could not resolve the matter, that the parties stipulate to BCBS becoming an intervening party. BCBS neither waived its subrogation claim nor filed a formal petition to intervene. A settlement hearing was scheduled, and BCBS received notice that any alleged right to subrogation that it planned to claim against the settlement would be considered at the hearing. BCBS appeared by counsel at the settlement hearing.

The district court approved the $2,000,000 settlement and denied BCBS's subrogation claim. BCBS then filed a formal petition to intervene and brought a motion to vacate the judgment. The district court denied both motions.

## ISSUES

1. Did the district court err by denying BCBS's motion to intervene as of right?

2. Does ERISA preempt the application of state subrogation law to BCBS's benefit plan?

3. Is BCBS entitled to subrogation as a matter of law?

## ANALYSIS

### I. Intervention

On appeal, this court may independently assess the appropriateness of the district court's denial of intervention as of right. *Norman v. Refsland,* 383 N.W.2d 673, 676 (Minn.1986). In order to intervene as of right, a nonparty must demonstrate the following:

(1) timely application for intervention;

(2) an interest relating to the property or transaction which is the subject of the action;

(3) circumstances demonstrating that the disposition of the action may as a practical matter impair or impede the party's ability to protect that interest; and

(4) a showing that the party is not adequately represented by the existing parties.

Minn.R.Civ.P. 24.01; *Minneapolis Star & Tribune Co. v. Schumacher,* 392 N.W.2d 197, 207 (Minn.1986). The district court concluded BCBS's motion to intervene was untimely.

■ The determination of whether intervention is timely must be considered on a case-by-case basis. *Omegon, Inc. v. City of Minnetonka,* 346 N.W.2d 684, 687 (Minn. App.1984), *pet. for rev. denied* (Minn. June 12, 1984). Timeliness of an application depends on factors such as how far the suit has progressed, the reason for the delay in seeking intervention, and any prejudice to the existing parties because of the delay. *SST, Inc. v. City of Minneapolis,* 288 N.W.2d 225, 230 (Minn.1979).

■ The policy of encouraging intervention whenever possible is favored by courts, and the rule should be liberally applied. *Engelrup v. Potter,* 302 Minn. 157, 166, 224 N.W.2d 484, 489 (1974). Posttrial intervention, however, is not viewed favorably. *Brakke v. Beardsley,* 279 N.W.2d 798, 801 (Minn.1979). Intervention should not be allowed where circumstances show that the would-be intervenor was aware of the suit and permitted the trial to proceed, waiting to see if the outcome would be favorable to its interests. *State Auto. & Casualty Underwriters v. Lee,* 257 N.W.2d 573, 576 (Minn. 1977).

■ The procedural history in this case is unusual. In a letter, Evan Flam's attorney asked BCBS to waive its right to subrogation. The attorney suggested that, in the event BCBS refused to waive its claim, all parties would stipulate to BCBS being made an intervening plaintiff. BCBS was not made a party to the lawsuit, however, merely by virtue of this suggestion. A party desiring to intervene must serve a notice of intervention on all parties to the action. Minn. R.Civ.P. 24.03. A party may only intervene without notice upon written consent of all parties to the action. *Id.* BCBS did not provide proper notice nor did it have written consent from all parties. Instead, it moved to intervene only after the settlement hearing was held and after the district court denied its subrogation claim.

■ Although BCBS failed to follow the required procedures to intervene, the respondent and the district court were aware that BCBS was not waiving its right to subrogation. Further, BCBS was never made a party to the lawsuit, even though the district court allowed BCBS to participate fully in the settlement hearing. Perhaps most important, the court addressed BCBS's subrogation claim on the merits and entered judgment denying that claim. Thus, we conclude that, in effect, the district court treated BCBS as though it were a party to the lawsuit.

We disagree with the district court that intervention by BCBS would have unduly prejudiced the respondent's rights in this case. To the contrary, permitting BCBS to intervene would have resolved the question of whether BCBS was bound by the district court's denial of the right to subrogation, and would have prohibited BCBS from bringing a separate action against respondent on the issue of subrogation. *See Provident Life & Accident Ins. Co. v. Linthicum,* 930 F.2d 14, 16 (8th Cir.1991) (insurer was not bound by district court's prior order since it was denied leave to intervene and thus was not a party to the proceedings).

The unique procedural posture and circumstances of this case lead us to conclude that the district court erred in refusing to do formally that which it did informally, to wit, permit BCBS to intervene. *See Refsland,* 383 N.W.2d at 678 (judicial economy may favor intervention); *Erickson v. Bennett,* 409 N.W.2d 884, 886 (Minn.App.1987) (justice required that late intervention be permitted). By permitting intervention, the district court would have validated its exercise of jurisdiction in addressing the subrogation issue on the merits. Of most importance to this court on appeal, however, is the fact that BCBS, the disappointed petitioner for intervention in the district court, joins respondent in actively requesting that this court address the subrogation issue on the merits. That joint request satisfies us that both parties consider the matter to have been fully explored in the district court and that BCBS does not view the district court's formal denial of intervention as in any manner prohibiting BCBS

from fully expressing its position on the subrogation issue. We shall, therefore, proceed to review the issue of subrogation.

## II. ERISA preemption

BCBS alleges that it is entitled to recovery under its subrogation claim and that the district court erred in denying that relief. In effect, BCBS argues that ERISA preempts the antisubrogation rules enunciated in *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699 (Minn.1983); that because of that preemption courts must interpret the contract before it based on federal common law; and that application of federal common law in this case results in recovery by BCBS under its subrogation rights. We agree with BCBS that ERISA preempts any state subrogation laws and that federal common law must be applied. We disagree, however, that preemption and application of federal common law leads to recovery. We shall address each of these factors in turn.

ERISA preempts any state law that relates to an employee benefit plan. 29 U.S.C. § 1144(a) (1975). The Minnesota Supreme court has concluded that the state subrogation law embodied in *Westendorf* relates to an employee benefit plan. *Hunt by Hunt v. Sherman*, 345 N.W.2d 750, 753 (Minn.1984). There are, however, several exceptions to section 1144(a). We must determine, therefore, whether any of these exceptions apply here to save the state common law from preemption.

■ ERISA does not preempt any state law that "regulates insurance." 29 U.S.C. § 1144(b)(2)(A). Factors to consider in determining whether a law regulates insurance are: (1) whether a particular practice has the effect of transferring or spreading the policyholder's risk, (2) whether the practice is an integral part of the policy relationship between the insurer and the insured, and (3)

whether the practice is limited to entities within the insurance industry. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 743, 105 S.Ct. 2380, 2391, 85 L.Ed.2d 728 (1985).

■ Applying this analysis, the Eighth Circuit concluded that common law rules on subrogation were not the type of state insurance regulations intended to survive the broad scope of ERISA preemption. *Baxter by Baxter v. Lynn*, 886 F.2d 182, 186 (8th Cir.1989). The *Baxter* court determined that "[t]he practice of subrogation does not transfer the risk from a policyholder to his or her insurer" but rather "limits the recovery available to the policyholder by preventing a double recovery." *Id.* The court further stated:

[T]he law of subrogation, while generally applicable to insurance contracts, is not specifically directed toward the insurance industry. While laws regulating subrogation rights apply in part to holders of insurance, they do not regulate the insurance industry directly.

*Id.* But see *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (Pennsylvania anti-subrogation statute was sufficiently aimed at the insurance industry so as to fall within ERISA's insurance savings clause).

■ We find the rationale of *Baxter* persuasive. Minnesota's common law on subrogation is applicable to many factual circumstances unrelated to the insurance industry, and, therefore, falls outside the scope of the savings clause. *See Hunt*, 345 N.W.2d at 753. Consequently, we conclude that ERISA preempts the application of state subrogation law to BCBS's benefit plan.[1] *See id.*

## III. Application of federal common law

■ Having determined that ERISA does preempt the application of state subrogation law in this case, we must decide what

---

1. Respondent claims that the plan involved in this case falls outside the scope of the "deemer" clause because it was an insured plan. *See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985) (self-funded employee benefit plans are protected from state regulation because they are not deemed to be engaged in the business of insurance; the state may regulate plans insured

by independent insurance companies). The "deemer" clause is not a factor to be considered, however, unless the state law regulates insurance in the first place. *See Hunt by Hunt v. Sherman*, 345 N.W.2d 750, 754 n. 4 (Minn.1984) ("deemer" clause need not be discussed where the state subrogation law at issue does not come within the insurance law exception).

law applies. We note initially that ERISA is silent on the issue of subrogation agreements. *Cutting v. Jerome Foods, Inc.*, 820 F.Supp. 1146, 1151 (W.D.Wis.1991), *aff'd* 993 F.2d 1293 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993). The United States Supreme Court has directed that when ERISA is silent, courts "develop a federal common law of rights and obligations under ERISA-regulated plans." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (holding that federal courts are to develop a federal common law of rights and obligations under ERISA regulated plans) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987)). Perhaps most important, cases applying federal common law have indicated both that subrogation clauses may be enforced, and that subrogation rights are to be determined solely by resort to the language of the contract. *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir.1992) (ERISA demands adherence to the written terms of an employee benefit plan); *Serembus ex rel. UIU Health & Welfare Fund v. Mathwig*, 817 F.Supp. 1414, 1423 (E.D.Wis.1992) (because ERISA does not expressly prohibit subrogation, the court must assume Congress intended to allow it; thus the provisions of the subrogation agreement control the rights of the parties). Thus, we shall apply federal common law as we address the specific language of the contract in this case.

### IV. BCBS subrogation rights under the contract

 The sole reference to subrogation in BCBS's policy with Darryl Flam provided:

**Subrogation** is a way of preventing duplicate payments. When you have the right to recover the cost of treating your injuries from another person or organization after we have reimbursed you for them, we have the right to recover up to that cost from whatever they pay you. Examples are duplicate amounts you receive through a lawsuit, a settlement, or from a third party or insurer.

BCBS urges that this language entitles it to reimbursement regardless of whether the respondent was fully compensated. We disagree,[2] and, by applying federal common law, conclude that the language of the contract is insufficient to entitle subrogation because the language fails to specify priority of payment. Contrary to BCBS's assertion, the plain language of the contract is not subject to only one interpretation. Because Evan Flam received an undifferentiated recovery which does not amount to full compensation, it is difficult, if not impossible, to determine whether he in fact received duplicate payments for the cost of treating his injury. *See Sanders v. Scheideler*, 816 F.Supp. 1338, 1345 (W.D.Wis.1993) ("it is impossible to determine how the insurance proceeds were intended to be allocated"). In addition, the contract language fails to delineate what the parties intend to constitute a duplicate payment. Therefore, we cannot construe the language of the contract here in such a manner as to permit subrogation recovery by BCBS prior to respondent's full recovery.

This conclusion, we believe, is consistent with other ERISA cases in which contract

---

**2.** We do agree, however, with BCBS that ERISA preemption rules preclude applying *Westendorf* here. State common law subrogation doctrine can have no application in ERISA cases. We note, though, that the holding of *Westendorf* is not inconsistent with the result we reach in this case. *Westendorf* permitted "express contract terms to the contrary," to modify the common law doctrine that "subrogation * * * will be denied prior to full recovery." *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn. 1983). This court, in *Hershey v. Physicians Health Plan*, 498 N.W.2d 519 (Minn.App.1993), ruled that the contract language was, in fact, specific enough to modify the state common law doctrine. Thus, *Hershey*, in looking to the lan-

guage of the contract, applied a state common law standard fully consistent with federal common law. Finally, in *Badger Equipment Co. v. Brennan*, 431 N.W.2d 900 (Minn.App.1988), a case which BCBS cites as erroneously decided and one which BCBS asks us to overrule, this court applied language of the contract to determine the issue of subrogation. In so doing, the *Badger* court was in full compliance with federal common law. We construe the language in *Badger*, which appears to apply "Minnesota subrogation law as articulated in *Westendorf*," *id.* at 904, as merely recognizing that under the facts of that case application of state common law resulted in a decision identical to that reached under federal common law.

language has been interpreted. The court in *Sanders* discussed subrogation rights as follows:

It is well established that state subrogation doctrines are preempted under ERISA. * * * In this case, however, application of the make-whole doctrine [3] would not supplant or dictate the terms of the plan. The doctrine would serve strictly as a default rule to be applied only when a plan fails to designate priority rules or provide its fiduciaries the discretion necessary to construe the plan accordingly. In the alternative, the plan and its beneficiaries could avoid the application of this doctrine by agreeing to designate the insurance proceeds. Adoption of the make-whole doctrine as a default priority rule appears consistent with the congressional mandate to fashion federal common law to facilitate the ERISA scheme.

*Sanders,* 816 F.Supp. at 1346–47.

In *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993), another ERISA case, the court found that the company was not unreasonable in interpreting the plan as disclaiming the make-whole principle. *Id.* at 1299. In doing so, however, the court recognized that the make-whole principle "exists only when the parties are silent. It is a gap filler." *Id.* at 1297.

In *Serembus,* a third ERISA case, the court looked to the specific language of the plan and determined that in the face of that specific language the " 'make-whole' doctrine should not be applied." *Serembus,* 817 F.Supp. at 1423.

If, in fact, there was specific priority of payment language in the BCBS contract at issue here, we would unhesitatingly give that language full force and effect. ERISA preemption doctrine and federal common law principles would permit no other result. The contract language here, however, is silent as to priority of payments. Therefore, the district court was correct in denying subrogation.

3. We equate our words "no subrogation until full recovery" with the "make-whole doctrine."

## DECISION

The district court erred by denying BCBS's petition to intervene. BCBS's ERISA plan did not reserve a first priority right to reimbursement, however, and the respondent was not fully compensated for his injuries. Consequently, BCBS is not entitled to its subrogation claim.

**Affirmed in part and reversed in part.**